## THOMPSON vs. HARLOW.

The defendant hired from the plaintiff a horse, to perform a journey. While he had as yet performed but a small part of the journey, the horse was discovered to be sick. Defendant's attention was called to the condition of the horse, who continued his journey, and at the end, the horse died. *Held,* that defendant is liable to the plaintiff.

Case in Catoosa Superior Court. Tried before Judge D. A. WALKER, at the November Term, 1860.

This was an action, brought by John Harlow against Theron B. Thompson and William L. Witherspoon, to recover damages for a horse, hired by said Harlow to the defendants, and which, the plaintiff alleged, was killed by the careless, negligent and improper driving of said horse in a buggy, by the said defendants.

On the trial of said case, the following testimony was introduced by the plaintiff, to wit:

In the month of August, 1858, the defendant, Thompson, hired from the plaintiff a roan horse, about six years old, and worth from one hundred and fifty to one hundred and sixty-five dollars, to drive in a buggy from the town of Ringgold to Rock Spring Camp Ground, in the county of Catoosa, a distance of about twelve miles; that Thompson said the horse took sick before he was driven a mile from Ringgold; that Thompson started to the Camp Ground about 12 o'clock, or a little after that time, and arrived at the Camp Ground after the close of the 3 o'clock services, which usually commence at 3 o'clock and continue about one hour and a half; that, when the defendant drove up to the Camp Ground, the horse was wet with sweat, and seemed to have been driven very hard; that the horse also appeared to be sick as well as fatigued, and wanted to lie down as soon as he was stopped; that the defendant, Witherspoon, was in the buggy with Thompson when they arrived at the Camp Ground, and Thompson said he had driven to the Camp Ground from Ringgold in an hour and ten minutes; that the horse died in about three hours after they drove up, and the defendants did all they could to save him; that in the opinion of one of the witnesses, the horse had been overdriven.

LIABILITY OF HIRER OF HORSE FOR NEGLIGENCE. "A horse was hired from a livery stable for a trip to a plantation, and was used by an employee of the hirer; it was turned into a lot with two plantation mules, and all ate what the plantation horses had left of corn and fodder. The distance traveled was twenty-six to twenty-eight miles; the day was warm; on the return trip, the horse became sick at a place some seven or eight miles from home; he was not stopped but was driven with two persons in the buggy, until within a half mile

The defendants introduced the following testimony, to wit:

The defendants left the town of Ringgold about one o'clock with the horse in a buggy, and drove not more than five miles per hour; that the witness, Witherspoon, one of the defendants, saw no signs of the horse being sick, except that he appeared dull, and had frequent discharges from his bowels, and the witnesses stated to the other defendant, Thompson, soon after they left town, and when they were at the creek, that something must be the matter with the horse, that he was so dull, and dunged too freely; that, about four miles from Ringgold, the defendants met two other persons, and stopped for a few minutes; that these two persons said the horse was sick and his belly was swollen, and that defendants had better take him back to town; that witness thought they were joking, and the defendants replied that the horse was cow-bellied; that the horse had an unusually large body naturally; that, when the defendants arrived at the Camp Ground, the horse seemed to be sick, and, in the opinion of several witnesses, to have the colic; that the defendant, Thompson, employed a man to doctor the horse, and that everything was done by the gentleman thus employed that could be done under the circumstances, to save the horse; that Thompson did not remain with the horse, but went off to the stand, or to some of the tents, and left the horse in charge of the person employed to doctor him; that, when the horse was about to die, Thompson was sent for and came to where the horse was; that the person employed to doctor the horse, treated him for colic, giving him soda and tobacco, and raking him with a fence rail, and the said person so employed thought the horse died of colic.

Upon this testimony, the jury returned a verdict in favor of the plaintiff for one hundred dollars and costs of suit.

Counsel for the defendant, Thompson, moved for a new trial, on the grounds:

1. That the jury found contrary to law.

2. That the jury found contrary to the evidence.

3. That the verdict is not supported by the evidence.

Upon the hearing of said motion, at the May Term, 1860, the presiding judge overruled the same and refused the new trial, and the writ of error in this case is prosecuted to reverse that decision.

of his home. After the horse was left, the person driving him went on to let the owner know of it. The horse died the same day. The owner swore that the conduct of the employee in charge was wrong and cruel, after the discovery that the horse had scours. The employee and the person in the buggy with him swore that all was done for the best; that they thought best to get the horse home to the owner, who was a livery stable keeper and an expert in these diseases of horses: Held, that there was **sufficient evidence to support a verdict in favor of the owner against the hirer.**" Hawkins v. Haynes, 71 Ga. 40 (1), 42.

Thompson vs. Harlow.

A. R. WRIGHT, representing DODSON, for the plaintiff in error.

McCONNELL & TRAMMELL, for the defendant in error.

*By the Court.*—LYON, J., delivering the opinion.

The hirer of a horse is bound to take the same care of it that a prudent man would of his own property; and is responsible for all injuries that result from his neglect. If the horse becomes sick, or exhausted, it is his duty to abstain from using it, and if he pursues his journey, he is liable for all the injury occasioned thereby. *Story on Bailment,* §§405, 398. In this case, the horse hired by the defendant was discovered to be sick, and the attention of the hirer called to that fact, while he had as yet accomplished but a small portion of his journey. He, then, ought to have abstained from the further use of the horse in that condition. As he did not, but continued the journey, and the horse died at the end of it, the defendant is liable.

That the verdict was less than it ought to have been, was not a matter of complaint by the defendant. A new trial can not be granted to him on that ground, and as that is the only error in the record, and in favor of the defendant, the new trial must be refused.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court that the judgment of the Court below be affirmed.