Francis C. Leach *vs.* William P. French.

Hancock.     Opinion April 23, 1879.

*Original liability.     Implied promise.     Consideration.*

The defendant's horse became diseased and sick while in possession of one who hired it of the defendant, and was left with the plaintiff for care and cure by the hirer, and the plaintiff claimed pay of the defendant as the owner of the horse. The defendant knew that plaintiff was keeping the horse, and wrote to him, mentioning the fact of his ownership, and inquiring as to the condition of the horse, and saying that an uncle of the hirer would pay the bill.

*Held,* that while it is the duty of one who hires a horse to pay the ordinary expenses of its keeping while he is using it under his contract, yet, if the horse become sick and disabled, without fault of the hirer, so that he can no longer use it for the purpose for which he hired it, the consequent loss and expense falls upon the owner, who impliedly undertakes, when he lets the horse, that it shall be capable of performing the service for which it is let, and the owner is responsible to the hirer for such necessary expense as he incurred by reason of the failure of the horse to perform the required service.

*Held,* that the naked fact that the horse became diseased and sick on the journey raises no presumption of negligence on the part of the hirer, but the presumption is the other way.

*Held,* that, under the circumstances above stated, the knowledge of defendant that plaintiff was keeping the horse, and his permitting it to remain with him for that purpose, raised an implied promise on the part of defendant to pay the plaintiff as for services done and expenses incurred by plaintiff in and about the business of the defendant; and that defendant's saying to plaintiff that somebody else would pay the bill, did not prevent the plaintiff from giving credit to defendant and holding him responsible for the keeping of the horse.

On report.

Assumpsit, upon an account annexed, to recover for the board and keeping of a sick horse while alive, and the expenses of removal when dead.

Defendant was owner of the horse and let him to a young man by the name of Devereux. The horse became diseased and sick while in Devereux's hands and he left him with the plaintiff for care and cure. While the horse was on the hands of the plaintiff the defendant wrote him informing him the horse belonged to him, making inquiry about the condition of the horse and saying that an uncle of Deveruex would pay his bill. After the bill was contracted, (the horse being dead) the counsel for the plaintiff wrote the defendant demanding payment of the bill. The defendant answered thus : " Please not make any cost on it (the bill) as I will call and settle the same soon." Plaintiff's attorney, after receiving the letter, wrote back to defendant, saying that he would wait. After waiting a while, in consequence of this (defendant's) letter, payment not being made, the demand was sued.

If, upon this evidence, the plaintiff is entitled to recover, then judgment is to be for him; if not, judgment to be for the defendant.

*H. A. Tripp*, for the plaintiff.

*A. P. Wiswell*, for the defendant, contended :

I. Outside of defendant's letter, the testimony shows no liability from defendant to plaintiff. There was no contract between them, but was one between the plaintiff and the hirer of the horse. Plaintiff never notified defendant that he was keeping the horse on his account. How did the horse become sick? The testimony does not show. If on account of fault of the hirer, he alone is liable for the keeping. The burden of proof is upon plaintiff. *Randall* v. *Doane*, 9 Gray, 408. Story on Bail., § 389.

II. Defendant's letter created no legal liability, nor any obligation to pay a debt which had no legal or equitable foundation. Chit. Con. 34, 36, and notes. Many decided cases hold that where one, through mistake of the law, acknowledges himself under an obligation which the law does not impose, he is not holden thereby.

BARROWS, J. The case as stated in the report is that the defendant owned the horse, for the board and keeping of which while sick and the expense of its removal when dead plaintiff brings this action under the following circumstances:

Defendant let the horse to one Devereux. The horse became diseased and sick while thus let, and Devereux left him with the plaintiff for care and cure. While plaintiff was keeping the horse defendant wrote him, informing him that he (defendant) owned the horse and inquiring about its condition, and saying that an uncle of Devereux would pay his bill. After the horse died plaintiff's attorney wrote defendant, demanding payment of the bill. Defendant answered, "Please not make any costs on it (the bill) as I will call and settle the same soon." Plaintiff's attorney thereupon wrote defendant saying he would wait. After waiting a while, in pursuance of this arrangement, payment not being made, this suit was brought. Defendant denies his liability to pay for the expenses of his horse thus incurred, and contends that there was no valid consideration for his express promise to do it. Unless there was an original liability on his part by reason of the circumstances and acts of the parties while the plaintiff was furnishing the care and board of the horse, it may well be doubted whether a valid consideration is shown for the promise in defendant's letter to the attorney.

We do not find it necessary to decide that question, for, as the case is stated, we think, upon natural and legal presumptions, it is made to appear that the plaintiff might well charge the keeping of the horse to its owner, and that the defendant would be liable for the bill without any express promise.

The first inquiry is, what were the respective rights and duties of the defendant and Devereux under the circumstances disclosed?

"If a man hires a horse," remarks Lumpkin, J., in *Mayor of Columbus* v. *Howard*, 6 Ga. 213, "he is bound to ride it moderately and to treat it as carefully as any man of common discretion would his own, and to supply it with suitable food." Thus doing, if the animal falls sick or lame, without any want of ordinary care on the part of the hirer, he is not responsible to the owner for the consequences. The owner of the animal must bear them.

But, if the horse falls sick or becomes exhausted, the hirer is bound not to use it. And if he does pursue his journey and use it when reasonable care and attention would forbid, he would make himself responsible to the owner for that act. *Bray* v. *Mayne*, Gow. 1, (5 E. C. L. R. 437.)

On the other hand, one who lets a horse impliedly undertakes that the animal shall be capable of performing the journey for which he is let; and if, without the fault of the hirer, he becomes disabled by lameness or sickness so that the hirer is compelled to incur expense to procure other means of returning, such expense may be recouped against the demand of the bailor for the services. *Harrington* v. *Snyder*, 3 Barb., (S. C.) 380.

Upon whom, then, as between Devereux and the defendant, should the expense of keeping and caring for the defendant's horse which " became diseased and sick while in Devereux's hands " fall? Up to the time when he fell sick it was Devereux's business to furnish him at his own proper expense with " meat for his work." But how was it when he could no longer lawfully use him under his contract? Unless the horse was disabled through some fault or neglect of Devereux, the owner is the one who bears the burdens occasioned by his failure to perform the work for which he was hired, and among them would be the expense of the care and cure of the animal—an expense which enures directly to his benefit. There would be good reason for holding that in such case the hirer is, *ex necessitate*, the agent of the owner to procure such reasonable and necessary sustenance and farrier's attendance as might be required until the animal could be got home; for, while the hirer is not responsible for any mistakes which a regular farrier whom he calls in may make in the treatment of the animal, still, if, instead of applying to a farrier, he undertakes to prescribe for the beast himself, and by his unskilfulness does it a mischief, he assumes a new degree of responsibility and becomes liable to the owner for the result of any want of such care as a man of ordinary prudence would take of his own horse. *Deane* v. *Keate*, 3 Camp. 4.

But it is unnecessary in this case to determine the extent of the hirer's authority as agent for the owner, for the report shows that

while plaintiff was keeping the horse defendant wrote to him mentioning his ownership and inquiring as to the condition of the animal. Since he thus knowingly availed himself of the plaintiff's services and outlay in the premises, the law will imply a promise on his part to do what was right and pay the plaintiff for them. Nor could the fact that he gave the plaintiff an assurance that Devereux's uncle, who was certainly under no legal obligation so to do, would pay the bill, make any difference with regard to plaintiff's right to charge the keeping of the horse to its owner who knew he was keeping it. " The horse became diseased and sick while in Devereux's hands." There is nothing here to show that it was by the fault of Devereux. The language used rather indicates the contrary, and the legal presumption is against it. Negligence and misdoing are not to be presumed, but there must be some positive evidence of them. *Cooper* v. *Barton,* 3 Camp. 5. *Tobin* v. *Morrison,* 9 Jur. 907. It is not enough to show that the horse became disabled, but he must show that he became so by the fault of the hirer. *Harrington* v. *Snyder, ubi supra.*

It is not the case of property while in the possession of a bailee for hire receiving an injury, which could not ordinarily occur without negligence on the part of the custodian, when it would be for him to show that the injury was not caused by his negligence. *Collins* v. *Bennett,* 46 N. Y. 490.

We think the case as stated shows a good consideration for an implied promise on the part of defendant to reimburse the plaintiff for his outlay in defendant's behalf. Hence, perhaps, defendant's readiness to promise payment if he could have a little delay.

*Defendant defaulted.*

APPLETON, C. J., WALTON, DANFORTH, PETERS and LIBBEY, JJ., concurred.