# Higman v. Camody.

*Action against Bailee to recover Damages for Injury to Barge.*

1. *Bailment for hire; liability of bailee.*—In bailment for hire, where the bailee has the use of the property and the bailor receives compensation therefor, the law imposes upon the bailee the duty of exercising that degree of care in respect of the property which a man of average prudence and diligence would bestow upon like property of his own, under similar conditions, which is denominated ordinary care, and the bailee is responsible for ordinary negligence in the performance of this duty.

2. *Same; action for damages; burden of proof.*-In an action by the bailor against a bailee for injury to, or destruction of, the property through the negligence of the latter, the burden is upon the plaintiff in the first instance to show the bailment, that the property was received under it, its condition when delivered, and that it was returned in a damaged condition, or was not returned at all; and if the property was shown in good condition for the uses of the bailment when delivered, and was not returned or was returned in a damaged condition, the burden shifts to the bailee, who is the defendant, to show that the failure to return the property or its damaged condition did not arise or result from a want of ordinary care on his part, and upon this proof being made, the burden is again shifted back to the plaintiff to affirmatively show some negligence on the part of the bailee causing the wrong or producing the injury complained of.

3. *Same; same; erroneous charge.*—In an action against a bailee for hire, to recover damages for injuries to a barge, where the evidence as to the condition of the barge at the time of hiring was conflicting, it is error to instruct the jury that before the plaintiff could recover, they must believe that the defendant or his agent failed to use ordinary care; such instruction placing the burden on plaintiff to show negligence on the part of the defendant, even though the jury should have concluded that the barge was in proper condition when delivered to the bailee.

4. *Principal and agent; notice to agent, notice to principal.*—Notice received or knowledge acquired by an agent while engaged in the transaction of business in accordance with the general usage of his

[Higman v. Camody.]

employment, and within the general apparent line of his duty and authority as such agent, is notice to and knowledge of the principal.

5. *Duty of bailee after discovering defect in property.*—When a bailee discovers a defect in the property being used under the bailment, he has no right to any longer rely upon the bailor's statement that the property was all right and in good condition, but must discontinue to use it until the property is repaired, or notify the bailor and put the responsibility upon him; and to continue to use the property in this defective condition is negligence, rendering the bailee liable for resulting damages.

6. *Bailment; secret instruction to agent not admissible.*—In an action by a bailor against a bailee for hire, to recover damages to the property hired evidence of instructions given by the bailee to his agent who made the contract of bailment, in the absence of notice to the bailor of such instructions, is inadmissible.

7. *Same; improper charge*—In an action against a bailee for hire, to recover damages to a barge, where the witness testified that the barge was defective in construction, in that it was not strengthened by "rift bolts," without which it was liable to swag and open the seams, testimony that greater care should be exercised in loading a barge thus defective than one supplied with rift bolts, is inadmissible in evidence; the fact thus offered to be proved being a matter of inference for the jury, to be drawn from the absense of such bolts in the barge in question, and the testimony as to their utility.

APPEAL from the Circuit Court of Morgan.

Tried before the Hon. H. C. SPEAKE.

This action was brought by the appellant, H. C. Higman, against the appellee, M. C. Camody, to recover damages for injuries to a barge owned by the plaintiff, which injuries were sustained while the barge was in the possession of the defendant, who hired the same from the plaintiff. Issue was joined upon the plea of the general issue.

The tendencies of the evidence are sufficiently stated in the opinion. Defendant testified to instructing Neville, when sent to hire the barge a second time, to agree to pay for the time only that it was in actual use. To the question calling forth this testimony, plaintiff objected, because calling for the principal's instructions given in the absence of the other party, and because immaterial and irrelevant; and similar objection was made to the answer. Each objection was overruled, and the plaintiff separately excepted.

After defendant's witness Smith, had testified that this barge was weak in construction by reason of not being

[Higman v. Camody.]

strengthened by rift bolts, the heads of which are visible
from the deck, and that without them a barge is more
liable to swag and open the seams than one supplied
with the bolts, the court refused to allow plaintiff to ask
him if greater care should not be exercised in loading a
barge devoid of rift bolts, than one supplied with them.
To such refusal plaintiff duly excepted.

Upon the introduction of all the evidence, the plaintiff
requested the court to give to the jury the following writ-
ten charges, and separately excepted to the court's re-
fusal to give each of them as asked : (1.) "If danger to
the barge existed, and those in charge knew of that
danger, and if they, after this, placed and rolled heavy
logs on and over the barge, such acts alone entitle the
plaintiff to a verdict for all damage resulting from such
acts, independently of whether the barge was otherwise
carefully handled or not, and independently of whether
the barge was at first in a bad condition or not." (2.)
"If the dangerous condition of the barge was obvious to
Camody just prior to going after the last trip for logs,
when it sunk, and if it was apparent to him that the con-
tinuous use of the barge was likely to result in immediate
disaster, and injury to the barge, it was his duty to
desist from such further use thereof ; and if he or any of
his employés failed to do so, but persisted in such use of
the barge and thereby caused the barge to sink and be
injured, then I charge you that he was guilty of negli-
gence, and your verdict must be for the plaintiff for all
damages sustained thereby." (3.) "If the barge was
in danger of sinking and such danger was manifest to
those in charge of it, and if they afterwards continued to
pile heavy logs upon it and roll them across it, your ver-
dict must be for the plaintiff, whether the barge was
otherwise properly handled or not in loading." (4.)
"If the condition of the barge previous to its sinking and
the circumstances surrounding it were such as to con-
vince a reasonably prudent man that to load it with logs
was dangerous and would in all probability result in dis-
aster to the barge ; and defendant or his employés using
the barge persisted in such use of the barge and thereby
caused the barge to sink and be injured, then your ver-
dict must be for the plaintiff for all damages thereby
sustained." (5.) "If the jury believe from the evidence
that the barge had on the first trip sprung a dangerous

[Higman v. Camody.]

leak, and this was known to Camody or his agents or servants in his charge, and after this Camody took the barge down the river and partially loaded it with logs, so that one end of the barge was a foot lower in the water than the other; and if the barge was left in this condition for three days in the rainy and stormy weather, then I charge that such facts, if facts they be, constituted such negligence on the part of Camody or his servants or his employés as for the consequences of which he is liable to plaintiff in this suit." (6.) "Although you may believe the barge was primarily in bad condition and out of repair, yet if it was in danger of sinking when unloaded of the first cargo of logs, and those in charge of the barge knew of such fact, then taking the barge on a second trip for logs was negligence for the injurious consequences of which, if any, you must find a verdict for the plaintiff, whether the handling of the barge was in all other respects careful and prudent or not." (7.) "A continuance of the use of the barge after a dangerous leak was discovered, if such was discovered, would be negligence for the consequences of which the party so using or having the barge used must respond in damages to the owner." (8.) "If it became apparent to a reasonably prudent man that the condition of the barge was such that further use or loading thereof would result in additional injury to it, and if Camody, after this continued to use it, and such use caused it to sink and be injured and damaged, your duty is plain to find a verdict for the plaintiff." (9.) "If Camody or his employés had notice that the barge was leaking or in dangerous condition, it was their duty to use a higher degree of care and prudence in using the barge than if no such serious indications existed; and if the danger was so imminent as to threaten disaster, such as a submergence of the barge, it was their duty to desist from any such further use of it as would tend to enhance the danger." (10.) "Camody was under no obligation to use the barge after it became unsafe, or when it became apparent to him that it was unsafe; but it was his right to return the same to the owner; and if while in an obviously unsafe and dangerous condition he and his employés continued to use the barge for a purpose, and in a way that was manifestly dangerous under the peculiar circumstances of this case, and by reason of such use the barge was

[Higman v. Camody.]

sunk and injured, your verdict must be for the plaintiff."
(11.) "I charge that the use of the barge for loading or
hauling logs after a knowledge of the dangerous leak
was negligence in and of itself." (12.) "The act of
going for a second load of logs after the discovery of a
dangerous leak, if there was such a discovery, without
trying to stop the leak or notifying Higman, if there
was such a failure, was of itself negligence."

At the request of the defendant, the court gave to the
jury the following charges, and to the giving of each
one of them the plaintiff separately excepted: (1.)
"Before the jury can find for plaintiff, they must be-
lieve from the evidence that Camody and his agents or
servants failed to use ordinary care." (2.) "Though
the jury may believe from the evidence that defendant's
servants and employés knew of the defective condition
of the barge, yet if he and his employés and servants
used proper skill and care in its use, their verdict must
be for the defendant." (3.) "If the jury find from
the evidence that Higman before Camody got the barge,
told him that the barge was all right, then Camody had
a right to rely upon it and presume the barge was in
fact all right." (4.) "If the jury find from the evidence
that Camody in using the barge exercised just such pru-
dence and care as a reasonably prudent man would have
used about his own property, they must find for the de-
fendant." (5.) "Although the jury may believe that
Higman hired the barge for only one trip, and that
Camody was using the barge when it sunk without any
contract, yet if they believe that Higman received pay
for the barge on this trip, this was a ratification of the
use of the barge by Camody, although Camody may not
have had a contract for the use of the barge."

There were verdict and judgment for the defendant.
The plaintiff appeals, and assigns as error the rulings of
the court upon the evidence, and the giving and refusal
of the several charges asked.

E. W. GODBEY, for appellant.—The manner of letting
a barge, as shown by the evidence in this case, after
knowing that it had sprung a dangerous leak, and with-
out taking any steps to stop the leak or notify the owner,
was, as a matter of law, culpable and actionable negli-
gence on the part of the bailee, and the jury should have

[Higman v. Camody.]

been so instructed.—*Thompson v. Harlow*, 31 Ga. 348; *U. S. v. Yukers*, 9 C. C. A. 171; *The Iniziativa*, 6 C. C. A. 346.

The knowledge of Ross, agent of the bailee, acquired while in charge of the unloading of the barge, of its having sprung a dangerous leak, was the knowledge of defendant who placed him in charge thereof.—*Pepper v. George*, 51 Ala. 190; *Thomas v. Ins. Co.*, 56 Ala. 177; *Birmingham Trust & Sav. Co. v. La. Nat. Bank*, 99 Ala. 379; 16 Amer. & Eng. Encyc. of Law, 119.

Defendant's charge No. 1, given, erroneously required plaintiff to convince the jury that ordinary care had not been used by defendant.—*Seals v. Edmondson*, 71 Ala. 509; *Prince v. Ala. State Fair*, 106 Ala. 340; *Boies v. R. R. Co.*, 9 Amer. Rep. 347; *Woodruff v. Painter*, 30 Amer. St. Rep. 786.

D. W. SPEAKE and S. T. WERT, *contra.*

McCLELLAN, J.—The bailment involved in this case was for hire and use, the letter receiving compensation for the use of his chattel by the hirer. Being thus for the mutual benefit of both parties, the law imposed upon the bailee the duty of exercising that degree of care in respect of the property which a man of average prudence and diligence would bestow upon his own like property under like conditions, and which the law denominates ordinary care.—Schouler's Bailments, &c., §§ 134 *et seq.*; 2 Am. & Eng. Encyc. of Law, pp. 54 *et seq.*; *Woodruff v. Painter*, 30 Am. St. Rep. 786; *Seals v. Edmondson*, 71 Ala. 590; *Prince v. Alabama State Fair*, 106 Ala. 340.

The care thus required of such bailee—what is meant by the phrase "ordinary care" in this connection—is aptly illustrated by Mr. Schouler, as follows: "Let us take, for example, a case by far the most familiar under this head to English and American courts, namely, that of a horse hired for use. Now, unless the bailee took the animal for too short a time, or under a special arrangement whereby the bailor was to look after his own property, he ought to provide the creature regularly with proper food and drink, afford due shelter and repose, and, in general, to take reasonable heed that the animal, while resting, is so fastened up that it may not readily run away or be stolen. While putting the horse to ac-

[Higman v. Camody.]

tive use he should not harness carelessly, overload, over-
drive, be heedless of what he perceives to be the crea-
ture's frailties, nor fail to supply, prudently, wants
essential to its health and good condition.   If disease or
bruise be discovered during the bailee's term, he should
be discreet in its treatment, and in extremity call in
some farrier or expert; or else, informing his bailor
promptly, throw the responsibility, as he may generally
do, upon the owner.   During his whole term of use the
bailee ought to act honorably, humanely, and with such
reasonable regard for preserving the animal's value un-
impaired as from prudent men might be expected."
Schouler's Bailments &c., § 137.  As the particular
point involved appears to have a close application to one
phase of the case at bar, we quote further, in illustra-
tion of the care required of bailees of this sort, from the
Supreme Court of Georgia: "The hirer of a horse is
bound to take the same care of it that a prudent man
would of his own property; and is responsible for all in-
juries that result from his neglect.   If the horse become
sick, or exhausted, it is his duty to abstain from using
it, and if he pursues his journey he is liable for all the
injury occasioned thereby.—Story on Bailments, § 405.
In this case, the horse hired by the defendant was dis-
covered to be sick, and the attention of the hirer called
to that fact, while he had as yet accomplished but a
small portion of his journey.  He then ought to have
abstained from the further use of the horse in that con-
dition.   As he did not, but continued the journey, and
the horse died at the end of it, the defendant is liable."
*Thompson v. Harlow*, 31 Ga. 348.

In an action by a bailor against a bailee for the de-
struction of, or injuries to, the chattel while held under
the bailment, through the negligence of the latter, the
burden of proof shifts from one side to the other and
rests with plaintiff or the defendant upon the develop-
ment of the circumstances in the evidence.  It is, of
course, on the plaintiff to show the bailment, that the
defendant took the property under it and returned it in
a damaged condition, or did not return it at all.   It is
also, it seems, with him to show the condition of the
chattel when it was delivered to the defendant.  If the
property was in good condition for the uses of the bail-
ment, and it is not returned or returned in an injured

18

state, or, if though there be an infirmity or defect in the chattel, but the injury sustained by it is not of a character attributable to such defect—as, for instance, where a leaky boat is let and is injured by an explosion of gunpowder—the burden is on the bailee, since, in either of the cases put, the injury would not have happened in the ordinary course of things had he been duly prudent and diligent, not indeed to acquit himself of all negligence but, to show a cause producing the injury which *prima facie* did not arise or result from or operate on account of a want of ordinary care on his part. This being done, the burden shifts back to the plaintiff to affirmatively show some causal negligence on the part of the defendant. To illustrate : the hirer of a boat loses it in a storm of sufficient severity to have probably caused the loss without fault on his part. He acquits himself of negligence *prima facie* by showing these facts, and throws the *onus* on the letter to prove that notwithstanding the storm the boat would not have been lost but for defendant's negligence in going out in the storm, or, being out, his want of care and diligence in handling the boat. And in such case it is with the plaintiff to reasonably satisfy the jury by a preponderance of evidence that not the storm alone, but the failure of the defendant to act with prudence and diligence in view of the storm caused the loss.—Schouler's Bailments &c. § 23 ; *Collins v. Bennett*, 46 N. Y. 490 ; *Boies v. H. & N. H. R. R. Co.*, 9 Am. Rep. 347 ; *Woodruff v. Painter*, 30 Am. Dec. 786 ; *Seals v. Edmondson*, 71 Ala. 509, *supra* ; *Prince v. Ala. State Fair*, 106 Ala. 340, *supra*.

The bailment here was of a barge belonging to plaintiff for use by the defendant in transporting logs on the Tennessee river. It seems that the hiring was for one trip only and that the injury complained of was sustained during a second trip. The letter, however, accepted compensation for the use of the vessel on this second trip, so that the case stands as if the original letting had been for both trips. The evidence is conflicting as to the condition and river-worthiness of the barge when it was let and delivered to the defendant, and the jury might have reached either conclusion, that it was, or that it was not, in proper condition. There is no conflict in the evidence showing serious injuries to the barge, and that they were sustained during the sec-

ond voyage. They were of a character which ordinarily would not have been suffered had the barge been in good condition when it was let to defendant and had the defendant and his employès been prudent and diligent in the use of it. Assuming, as the jury had a right to find, that the condition was good, the *prima facie* presumption on these facts was that the injuries complained of resulted from defendant's negligence. Charge 1, given for defendant, is bad in view of these facts and this principle. Its effect was to put the burden on plaintiff to show negligence on the part of the defendant even though the jury should have concluded that the barge was in proper condition when delivered to the bailee.

When the barge was being unloaded after the first trip a dangerous leak in it was discovered by defendant's employès in charge of it. This discovery, being made by the employès in the line of their service, stands upon the same footing for all purposes in the case as if it had been made by the defendant himself: their knowledge of it was his knowledge.—*Pepper v. George*, 51 Ala. 190; *Birmingham Trust & Sav. Co. v. La. Nat. Bank*, 99 Ala. 379; *Ala. Nat. Bank v. Halsey*, 109 Ala. 196.

With this knowledge of a defect arising after the letting defendant had no right to further rely upon plaintiff's statement made at the time of the letting that the barge "was all right," nor to indulge a presumption, against the supervening fact, that it was all right. Charge 3 given for defendant was, therefore, erroneous.

The discovery of this leak and defendant's constructive knowledge of it make the analogy between this case and that of *Thompson v. Harlow*, 31 Ga. 348, where the bailee continued his journey after having knowledge that the horse he had hired and was riding was sick. As the rider should have abstained from continuing his journey on this horse, and been "discreet in his treatment" of the horse, and called in a farrier or expert, if unable to properly administer to the animal's ills himself; or else, should have promptly informed his bailor of the horse's sickness, and was guilty of negligence in not so doing, so here, the defendant, upon coming to a knowledge of this dangerous leak in the barge, which had been sprung after it came into his possession, should have discontinued its use and repaired the boat himself,

[Higman v. Camody.]

or have informed the plaintiff of the fact and put the responsibility on him ; and doing nothing of this, and continuing to use the boat in its dangerously defective condition, he was clearly guilty of negligence. And this would be equally true though the jury should find that the condition of the barge in other respects than this leak was bad at the time it came to defendant, for though one hire a blind horse, he should desist from the use of him if he should have an attack of colic, or should sprain a leg in consequence of being blind, and for injuries resulting from the continued use of the horse with colic or with a crippled leg he would be responsible. On these considerations we hold that charges 2, 4, 5, 6, 7, 11 and 12 should have been given for the plaintiff. Charges 2 and 4 given for defendant are bad and should have been refused because they take no account of defendant's negligence in using the barge *at all* after discovering its dangerous condition consequent upon the springing of this leak. Charge 2 of defendant's series, moreover, is bad for taking a distinction between the effect of defendant's knowledge of the condition of the barge, and that of his employés.

There was evidence of improper loading of the barge by the defendant in that logs were piled at one end of it and it was left in this condition for several days of very rainy weather and until it sunk, the unequal distribution of the burden having the effect to depress that end of the boat, the weight then being constantly increased by leak and rain water flowing into the depression. But we do not understand that any further loading was done after the submergence of that end of the boat was indicated, or that any further use was made of the barge by defendant before it sunk. We can not, therefore, say that charge 9 should have been given for plaintiff, or charge 3. Of course it was negligence for defendant to load the barge in this way and leave it to fill with water at the depressed end and sink ; but it is to be assumed that the jury were so instructed on the hypothesis of their belief from the evidence that this was done. And, of course also, the duty was on the defendant, and his employés, persisting, as the evidence goes to show he did, in using the barge after discovering the leak, to handle it with due regard to that fact and the danger of loss or injury to the property incident to it.

[Tranum v. Drum & Ezekiel.]

The defendant should not have been allowed to prove the instructions he gave to Neville "when sent to hire the barge the second time," in the absence of notice to plaintiff of such instructions.—*Birmingham Savings & Trust Co. v. La. Nat Bank*, 99 Ala. 380.

There was no error in excluding the proposed testimony of Smith that "greater care should be exercised in loading a barge devoid of rift bolts." This was matter of inference for the jury from the absence of such bolts in this barge and the testimony as to their utility, &c. &c.

Reversed and remanded.