(82 South. 161)

## WADE et al. v. GARNETT.  (8 Div. 139.)

(Supreme Court of Alabama.  Feb. 13, 1919. Rehearing Denied May 15, 1919.)

1. LIVERY STABLE AND GARAGE KEEPERS ☞12—CONVERSION OF HIRED HORSE.

Though a liveryman several days previous to hiring a team of mules for a long trip stated that to make the trip and return in a day over bad roads would overtax the team, that was not a limitation on the right of a bailee who engaged the team to make the trip in one day, so that such act would amount to a conversion rendering the bailee liable in trover to the liveryman on death of one of the mules on the return trip.

2. LIVERY STABLE AND GARAGE KEEPERS ☞12—CONVERSION OF HIRED HORSE.

Where a bailee who had hired a team of mules to make a trip from one point to another before returning drove the team to a doc-

tor's and got the doctor or a relative to pass judgment on the condition of one of the mules, there was no conversion;  the doctor residing in the town which marked the end of the journey.

3. LIVERY STABLE AND GARAGE KEEPERS ☞12—CONVERSION OF HIRED HORSE.

One who hired a team of mules to proceed from one town to another cannot, one of the mules having died on the return journey, be held liable in trover because he went one route and returned another;  both routes being customarily traveled by persons making the trip.

4. APPEAL AND ERROR ☞1040(7)—REVIEW—HARMLESS ERROR.

Where matters available under one count of the declaration could in view of the state of the evidence, be shown under another count, the sustaining of a demurrer to the latter count was not prejudicial error.

5. LIVERY STABLE AND GARAGE KEEPERS ☞12—HIRE OF ANIMALS—CARE.

The hirer of an animal should observe with respect to the use of it within the terms of the bailment the ordinary care a prudent man would take of his own property under like circumstances, and the hirer of a team of mules from a livery stable keeper for specified trip is under no absolute duty to refrain from using the animals when they become fatigued, although there may be cases when the duty to refrain from further use of a fagged animal is absolute.

6. LIVERY STABLE AND GARAGE KEEPERS ☞12—INJURY TO MULE—NEGLIGENCE.

The hirer of a team of mules who, when one of them became exhausted on the return trip, left it in care of a farmer and obtained a substitute, cannot be deemed guilty of negligence because he did not immediately telephone the liveryman letting the mules or make effort to do so;  for the only effect of communicating to the bailor of an animal the fact that it had become sick pending the bailment and without fault by the bailee would be to cast upon the bailor the responsibility for the care of the animal.

7. LIVERY STABLE AND GARAGE KEEPERS ☞12—INJURIES TO HORSE—NEGLIGENCE.

There is an affirmative duty on the hirer of an animal from a livery stable keeper to exercise discretion and diligence in having it treated if it becomes sick during the bailment without the hirer's fault.

Appeal from Circuit Court, Morgan County;  O. Kyle, Judge.

J. A. Wade and another brought suit against Arthur H. Garnett to recover damages for the loss of a mule belonging to plaintiffs and under contract of hire to the defendant.  There was judgment for the defendant, and the plaintiffs appealed. Transferred from Court of Appeals under section 6, Acts 1911, p. 449.  Affirmed.

Most of the facts sufficiently appear.  The following charges were refused the plaintiff:

(3) The court charges the jury that it is the law that, when one hires a mule and it becomes sick, the hirer is bound to use reasonable effort to communicate with the owner if the owner is in reach of communication by the ordinary facilities of communication.

(4) Even though no immediate medical attention may have been available for the mule, still, if he became sick and if his sickness became manifest at Moulton, and if defendant by reasonable effort could have had ordinary attention and care taken of the mule, or if by reasonable effort he could have telephoned the owner of the mule, and if he did not use reasonable effort to have ordinary care and attention of a nonprofessional character taken of the mule at Moulton, defendant was negligent, and if his negligence proximately contributed to the mule's death, defendant is liable.

(6) The court charges the jury that, although there were no horse doctors readily available in Moulton to bestow attention on the mule of a professional character, if such be the fact, that was no excuse for any failure of the defendant to use ordinary efforts to procure some sort of care and attention for the animal at Moulton; nor was it any excuse for any failure on defendant's part to attempt to communicate with the owners of the mule if the owners were in reach of communication by ordinary effort; nor was it any excuse for any attempt to drive the mule 24 miles the same day after having already driven him 25 miles on the same day, without feeding the mule or without the mule's being able to eat, if such things did occur, provided the mule was sick and plainly showed his sickness at Moulton.

E. W. Godbey, of Decatur, for appellants. Wert & Lynn, of Decatur, for appellee.

McCLELLAN, J. The plaintiffs (appellants) instituted this suit against defendant to recover damages for the loss of a mule belonging to the plaintiffs. Plaintiffs were liverymen at Decatur. For a reward they hired a team of mules and a vehicle to defendant for his use on a round trip about 23 miles distant. On the return trip, in the evening, some miles from Decatur, the mule in question became either exhausted or too ill to travel, was taken out by the defendant, and left with a farmer, from whom a substitute for the rest of the journey was borrowed. Early the next morning the mule died on the farmer's premises. The plaintiffs stated their case in three counts. The first count was in trover. The second count attributed the animal's death to negligent driving of the mule on the return trip over bad roads, when the defendant knew the animal was sick. The third count ascribed the death of the animal to negligent treatment, handling, and management of the mule on the return journey, without averment of its physical condition at any time.

[1-3] Since there was no evidence of a departure from the use contemplated by the terms of the bailment, the trover count was without any support in the evidence. Cart-

lidge v. Sloan, 124 Ala. 596, 26 South. 918; Hitt Lbr. Co. v. Ambrester, 192 Ala. 467, 469, 68 South. 338; Jones v. Fort, 36 Ala. 449, 459, et seq.; 2 Cyc. pp. 312, 313; 1 R. C. L. pp. 1078, 1079; Weller v. Camp, 169 Ala. 275, 52 South. 929, 28 L. R. A. (N. S.) 1106. The evidence did not disclose an agreement between the parties restricting the bailee's right to complete the journey in the daytime of one day, provided, of course, ordinary care characterized the bailee's use and treatment of the animal in completing the trip in one day. The fact that several days previously one of the plaintiffs stated to defendant that to make the trip from Decatur to Moulton and return in the daytime, over bad roads, would overtax a team, did not serve to introduce that limitation into the subsequent contract of the bailment. If the defendant drove the team to Dr. Masterson's, in Moulton, with a view to having him or his relative pass judgment on the then condition of this mule, that was not such an unauthorized use of the team as to constitute a conversion. Manifestly this act of the bailee, referable alone to care of the bailors' property, was not in the least inconsistent with the right of the owner. Spooner v. Manchester, 133 Mass. 270, 43 Am. Rep. 514. No claim of conversion could be predicated of that act of the bailee. The undisputed evidence went to show that the route traveled by the bailee, even though he went one route and returned another, were routes customarily taken by persons traveling between Decatur and Moulton.

[4] Unless the known sickness or exhaustion of the mule was such as to render the defendant culpable in respect of its use at the beginning of or during the return trip, there was no evidence of negligence, within the allegations of the third count, that would not have been the subject of consideration under the averments of the second count. The court committed no prejudicial error in giving the general affirmative charge for the defendant on the third count. Furthermore, the trial court was justified in concluding that the averments of this count that "on said day and date" (meaning December 30, 1915) the animal "died along the road" were affirmatively disproven, thereby vindicating the propriety of the action of the court in giving the general affirmative charge for the defendant as to the third count.

The judgment entry recites that plaintiffs' demurrers were sustained to special pleas 1 and 2 in so far as they were addressed to counts 1 and 2. Since the third count did not carry an averment that the bailee drove the animal when he knew it was sick, the first ground of the demurrer to special pleas 1 and 2 as an answer to the third count was without point, even if it is assumed that that ground efficiently took a separable objection

to these pleas as addressed to count 3. The court committed no prejudicial error in its rulings on the pleadings.

[5] Under the averments of the second count the primary, controlling issue was whether the defendant was negligent in the use and treatment of the animal, and that as affected by the allegation that he knew the mule was sick, and yet continued to use it on or during the lengthy return trip. The hirer of an animal should observe with respect to the use of it, within the terms of the bailment, the ordinary care a prudent man would take of his own property under like circumstances. Higman v. Camody, 112 Ala. 267, 20 South. 480, 57 Am. St. Rep. 33; Thompson v. Harlow, 31 Ga. 348; Leach v. French, 69 Me. 389, 31 Am. Rep. 296; 1 R. C. L. pp. 1076, 1077. The trial court instructed the jury in accordance with the law applicable to the case made by the evidence, both in the oral charge and in the special instructions given at the instance of the defendant. Through several special requests for instructions, referable for their propriety to the evidence before the jury, the plaintiffs sought to have the jury advised, in effect that the defendant was culpably negligent in using the animal for or on the return trip from Moulton. Under the facts hypothesized in some of these requests the plaintiffs invoked the court to declare the defendant to have been negligent, as a matter of law, in his use and treatment of the subject of the bailment. Whether the defendant was negligent in the premises depended, not only upon the known or reasonably observable physical condition of the mule, a question of dispute in the evidence, but also upon the further inquiry whether the use or treatment of the mule was inconsistent with the ordinary, reasonable care a prudent owner would have exercised in like circumstances. Authorities supra. The plaintiffs' view, as read from some of these requests for instructions, was that the duty not to use the animal became absolute when the animal gave evidence of being sick or fagged. Cases may, of course, occur where the duty to abstain from the further use of a sick or exhausted animal is absolute, where to continue the use would be negligence as a matter of law. An instance of this is found in Thompson v. Harlow, supra, a decision quoted in Higman v. Camody, supra. There the evidence of the animal's inability to continue the journey was so plain and the effect of the hirer's consciously cruel use of it so palpable that the court was justified in pronouncing as to liability on the ground that only the absence of all prudence would have sanctioned the continued use of the animal. Here the condition of the animal at Moulton, or during a part of the return journey, was not shown to be such as to jus-

tify the legal, conclusive deduction that the hirer's course of conduct and use of the animal was inconsistent with that an ordinarily prudent owner would have exercised under like circumstances.

[6] Since the only effect of communicating to the owner (bailor) knowledge of the fact that the animal has become sick, pending the bailment and without fault of the bailee is to shift to the bailor the responsibility for the care of the animal (Higman v. Camody, 112 Ala. p. 273, 20 South. 480, 57 Am. St. Rep. 33; Schouler on Bailments, § 137), the court did not err in refusing plaintiffs' requested instructions numbered 3, 4, and 6.

[7] There is an affirmative duty on the hirer of an animal to exercise discretion and diligence in having it treated if it becomes sick during the bailment, without fault on the hirer's part. Schouler on Bailments, supra; Higman v. Camody, supra. As we understand the complaint, there is no count therein ascribing the animal's death to the failure of the bailee to discharge the last-stated duty. The complaint, aside from the trover count, attributes the animal's loss to the use, within the general terms of the bailment, of the animal under conditions forbidding continued use. There is authority for the view that, when an animal becomes sick pending the bailment, without the fault of the bailee, the bailee is the agent of the bailor in having proper treatment given the animal by a farrier or veterinarian. Leach v. French, 69 Me. 389, 31 Am. Rep. 296, 298.

No prejudicial error appearing, the judgment is affirmed.

Affirmed.

All the Justices concur.