## JAEGER MACHINE COMPANY v. JOE MIRAU.[1]

December 15, 1939.

No. 32,153.

[1]Reported in 289 N. W. 51.

*L. W. Crawhall,* for appellant.
*Ryan, Ryan & Ryan,* for respondent.

HOLT, JUSTICE.

Plaintiff appeals from a judgment rendered on a verdict of a jury. Before the entry of judgment plaintiff's motion for judgment for the full amount claimed in the complaint notwithstanding the verdict or a new trial was heard and denied.

Plaintiff advertises itself as the world's largest manufacturer of road spreading and finishing machines. Its factory is at Columbus, Ohio. Through the efforts of the Minneapolis Equipment Company, acting by its president, A. C. Aslesen, and salesman, R. E. Olson, defendant leased from plaintiff a "Model MP-2 Jaeger Mix-in-Place Road Builder with 130 HP gas engine, crawler mounted, Twin 78″ pug mills; leveling unit with 21 st. straight edge runners and blending wings for 12 ft. width," rent to be $1,600 for the first month and $1,500 each succeeding month. The rent was to run from the time the machine was loaded on the

cars at plaintiff's factory and until there returned. Defendant was to pay freight charges both ways. The lease was in writing and signed by both parties. It is needless to state that plaintiff's rights were therein well protected, for evidently the form of the lease was the product of its legal adviser.

The complaint alleged the shipment of the machine under the terms of the lease from Columbus, Ohio, on August 24, 1937, and that defendant retained the same until November 5, 1937; that $1,600 had been paid as the first month's rent; and that there was due and unpaid rent of $3,000. It also claimed $266.30, transportation charges incurred in having the machine returned, and a second cause of action for goods sold and delivered to defendant by the Minneapolis Equipment Company of the value and price of $180, assigned by the latter to plaintiff. The answer, in addition to admissions and denials, set forth as a counterclaim that the machine was rented to defendant upon representations and warranties that it was fit and adequate to do the particular job of road construction defendant had contracted with the highway department of the state of Minnesota to do upon trunk highway No. 55 near Elbow Lake; that the machine failed to do such work either as rapidly or efficiently as warranted and represented, to the loss and damage of defendant in the sum of $2,017.80. Defendant denied that plaintiff incurred $266.30 in transporting the machine back to it; and also denied the purchase of the $180 worth of goods from plaintiff's assignor, the Minneapolis Equipment Company. The court submitted the several issues to the jury, which found, as special verdicts, that nothing was due plaintiff for rentals; that there was due plaintiff for transporting the machine to Minneapolis $157.49 and $180 for the goods sold by the Equipment Company to defendant, and awarded defendant $1,000 upon his counterclaim. Deducting the two sums awarded plaintiff by the special verdicts from the sum awarded defendant on his counterclaim, a general verdict was returned for defendant in the sum of $662.51 with interest at six per cent since November 5, 1937.

No errors are assigned upon the admission or exclusion of evidence during the trial. Nor, on this appeal, are the two amounts found in plaintiff's favor by the special verdict questioned. The assignments of error are: (a) Error in submitting Olson's authority to terminate the lease as of September 24, 1937; (b) error in refusing to instruct a verdict in favor of plaintiff and in denying it judgment notwithstanding the verdict; (c) error in submitting defendant's counterclaim to the jury; (d) the evidence does not sustain the special verdict that nothing is due plaintiff as rental on the lease, nor that defendant sustained $1,000 damages on his counterclaim.

The first assignment to consider is the action of the court in submitting to the jury Olson's authority to receive notice from defendant that he terminated the lease on September 24, and to arrange for the disposition of the machine other than by returning it to the factory of plaintiff. The latter acted almost wholly through R. E. Olson, the salesman of the Equipment Company. Plaintiff now virtually concedes that Olson had authority as its agent in the negotiations leading up to the execution of the lease. That means that it is responsible for his representations and warranties in regard to the machine. But it is insisted that with the approval of the lease by plaintiff all authority of both the Equipment Company and its officials, Aslesen and Olson, ceased. Defendant testified, in substance, that on September 24, 1937, he called at the Equipment Company's office in Minneapolis and talked with Olson. At that time he informed Olson that he could not use the machine any more and wanted to know whether to ship it to Minneapolis or to the factory, and was told that it was not to be shipped to the factory since the Equipment Company was to sell it. That he told Olson that he, defendant, had another job, a stabilization work he wished to do, and if the machine could be so fixed or adjusted that that job could be well done and also so changed that it would comply with the warranty, he might buy it. The upshot of the interview was that a contract was signed between defendant and the Equipment Company for the purchase of this very machine for $14,400. The

contract contained two dates. Its recital at the beginning was that it was entered into "this 24th day of Sept. 1937," and ends with this line: "Executed in triplicate, one copy of which was delivered to and retained by the purchaser, this twelfth day of October, 1937." Defendant testified that it was agreed that a Diesel engine should be substituted for the gasoline engine and the machine should be altered so as to make it conform to representations and warranties inducing the making of the lease. It is to be noted, of course, that this contract of purchase is between defendant and the Equipment Company, whereas the lease was between the defendant and plaintiff. But the person who communicated and negotiated with defendant was the same in each instance. The check for the rent was made payable to the Equipment Company. It reached plaintiff. Plaintiff apparently directed or acquiesced in the return of the machine to Minneapolis and not to its factory. Afterwards, when the purchase by defendant failed to be carried out, the Equipment Company sold the machine to another road contractor. Defendant testified that the purchase failed because plaintiff failed to make the alterations promised before the first installment of the purchase price was to be paid. There appears sufficient evidence to submit the authority of Olson to act for plaintiff in receiving notice of defendant's termination of the lease and direction where to return the machine.

The chief contention of plaintiff is that it was entitled upon this record to a directed verdict or to judgment notwithstanding the verdict for rent for one month and 11 days, in addition to the $1,600 paid for the first month. This is based on the proposition that if there was a breach of the warranties as to speed and efficiency of the machine defendant from the very first knew thereof and can neither counterclaim for damages sustained while continuing to use it nor escape paying the stipulated rent while retaining possession of the article leased. The machine was set to work on September 3 and tried until September 23. A large part of that time was no doubt spent in trying to see if this new and complicated contrivance could be made to do the work it was

designed to do. Cases involving leases of real estate or apartments in buildings are cited. Defiel v. Rosenberg, 144 Minn. 166, 174 N. W. 838; O'Neil v. Davidson, 147 Minn. 240, 180 N. W. 102. There are differences connected with the occupation of rented premises such as a house and the use of a new and complicated machine designed and leased for a specific purpose. It appears that this machine was a new invention not in use in this state. Plaintiff's agents, Aslesen and Olson, knew the job defendant had to do and induced him to hire this machine at a high rental so that the wearing course of the highway could be laid more expeditiously and economically than if the crushed gravel were mixed with the bituminous oil in windrows and spread in the theretofore usual method by repeated moving from side to side of the roadway by the blades of power patrols. Plaintiff sent two men with the machine to show defendant how to operate the same. They remained over a week. They failed to make it conform to the warranties or representations under which it was let. The jury could find that it was kept in use under promise that plaintiff would make it conform both as to speed and adjustment so as to pick up the crushed gravel down to the stabilization course. The jury could also find that the Equipment Company through Olson had authority to terminate the lease as of September 24, 1937, and accept the rent for the time it had possession of the machine. Plaintiff allowed the Equipment Company to retain the machine in Minneapolis for the purpose of selling it, although the sale to defendant fell through because plaintiff, according to defendant's testimony, failed first to make the adjustments before the first installment of the purchase price was to be paid. If defendant's tenancy terminated on September 24, 1937, and the rent was paid up to that date, no rent accrued thereafter even though possession did not immediately cease, because held under a tentative sale.

Plaintiff also cites, on the proposition that defendant's only way to end the lease was by returning the machine to the factory, Higman v. Camody, 112 Ala. 267, 20 So. 480, 57 A. S. R. 33; Williamson v. Phillipoff, 66 Fla. 549, 64 So. 269, 52 L.R.A.(N.S.)

412; Tuttle v. Irvine Const. Co.'s Recr. 253 Ky. 538, 69 S. W. (2d) 1034; Davis v. McConnell (La. App.) 146 So. 54. Some of these cases involve the leasing of vessels and their loss, either through negligence of lessee after knowledge of the unseaworthiness of the crafts, or some other cause, not like that in the instant case, failure to comply with the express or implied warranty. Standard Oil Co. v. Boyle, 231 App. Div. 101, 246 N. Y. S. 142, related to damages for loss of gasoline from a defective tank let to defendant. We are satisfied that the court rightly denied plaintiff's motion for a directed verdict for rent for any amount above that paid.

The submission of defendant's counterclaim to the jury is also assigned as error. This machine was leased under the representations that it could lay the "wearing course" or the crushed gravel and bituminous oil (asphalt and kerosene heated) at the rate of 33 feet per minute, and also spread the same for the roller. It is not necessary to attempt to describe the machine in detail. Suffice it to say, it is mounted on a caterpillar or crawler. The crushed rock is supposed to be in a windrow on a dust-free, stabilized course. The machine straddles the windrow, and extended in front are blades on either side which force the row to the center, where two augers elevate the gravel to a pugmill on top, into which a hose from a tank on a moving truck pours the heated oil. As the pugmill works it mixes or coats every grain of sand, pebble, or crushed rock with the oil and discharges the mixture in a windrow to the rear of the machine. If the mixture is perfect and all the gravel in the windrow in front has been picked up clean to the stabilization course, the rear mixed windrow can be spread by blades attached to the rear of the machine, ready for the roller. The evidence is compelling that the pugmill could not coat the crushed gravel adequately unless the speed was kept down to 18 feet a minute. Plaintiff, as well as its agent, the Equipment Company, and its officials, Aslesen and Olson, knew that defendant was doing the work for which the machine was leased under a contract with the state highway department, which

continually had its engineers and inspectors on the job to see that the provisions of the contract were performed. It also appears without dispute that no matter at what speed the machine was operated it did not pick up the crushed gravel in the windrow clean down to the stabilized course. That this was necessary in order to cement or attach the wearing course to the former is not open to dispute. The failure of the machine to pick up clean all crushed gravel down to the stabilized course made it necessary by other means to mix that which had not been taken up to the pugmill with that which went through and was left in windrow form. This mixing had to be accomplished by power propellers blading this windrow back and forth over the roadway until the oil penetrated all the crushed gravel down to the stabilized course. This, the testimony showed, took from four to five men with power propellers every day the machine was operated. Plaintiff contends that underneath the windrow of crushed rock was a layer of dust that defendant had neglected to sweep off; and, if there was any crushed rock not picked up and elevated to the pugmill, it was such as had been deposited in depressions in the stabilization course, or which because of some elevation in that course kept the blades from reaching and cleaning up all the crushed gravel. While defendant, on cross-examination, admitted there were some depressions and bumps in the stabilization course, there is no testimony that it was not as even and well prepared as such courses usually are. The evidence also shows that defendant employed sweepers and that the stabilization course was properly laid and had received a top dressing of tar or oil, all under the supervision of the inspector of the highway department, before the windrow of crushed rock was deposited thereon. The entire counterclaim was based upon the extra expense incurred by defendant for the hire of the power propellers and men blading the windrows left by the machine after going through the pugmill. Taking the whole situation into account as disclosed by the record, we think the evidence warranted the submission of the

counterclaim to the jury, and the special verdicts as to the amount are sufficiently supported.

What has already been said indicates our view that the evidence sustains the verdict that there was nothing due on rent and also the $1,000 damages awarded on the counterclaim. The trial court is not to be criticized but commended for requiring the jury to return special verdicts. None of the instructions are found fault with as to form.

The judgment is affirmed.

