[No. 30650. Department One. March 24, 1949.]

MILDRED LOUISE MCBEATH, *as Administratrix, Appellant,* v. NORTHERN PACIFIC RAILWAY COMPANY, *Respondent.*[1]

*Gagliardi, Ursich & Gagliardi,* for appellant.

*Robert S. Macfarlane* and *James W. Hodson,* for respondent.

[1] Reported in 204 P. (2d) 248.

JEFFERS, C. J.—This action was instituted by Mildred Louise McBeath, administratrix of the estate of Alexander McBeath, Jr., deceased, in the superior court for Pierce county, against Northern Pacific Railway Company, to recover damages for the death of Alexander McBeath, Jr., alleged to have been caused by the negligence of defendant.

Mr. McBeath's death resulted from a collision between a Northern Pacific southbound train and a milk truck, owned by Medosweet Dairy, and being driven by William J. Velacich, an employee of the company, who was learning the milk route under the direction of Mr. McBeath, route supervisor for Medosweet.

The complaint contains two causes of action. In the first, plaintiff asks for damages for herself in the sum of twenty-five thousand dollars, and twenty-five thousand dollars for her son Gary, aged four. In her second cause of action, plaintiff alleged that the estate of Alexander McBeath, Jr., suffered damages in the sum of four hundred sixty-four dollars, funeral expenses, and one hundred eighty-five dollars for burial and marker, for which amounts plaintiff asks judgment.

Defendant answered the complaint, denying all the allegations of negligence therein contained, and alleged affirmatively that the sole, direct, and proximate cause of the collision and the injuries and death suffered by the occupants of the truck as a result thereof was the negligence of William J. Velacich and Alexander McBeath, Jr., and each of them.

The cause came on for trial before the court and jury on February 4, 1948, and plaintiff proceeded to introduce evidence. At the close of plaintiff's case, counsel for defendant moved for a dismissal of the complaint and for a nonsuit upon two grounds:

"First, that there has been a complete failure of proof of any negligence on the part of the Railway Company, proximately causing or contributing to causing the accident in question; secondly, because there is affirmative proof of negligence on the part of the truck driver, and, of course, the relationship between the two men is such that the negligence of the driver is imputed to the decedent."

After counsel had argued the above motion, the court stated:

"THE COURT: Mr. Gagliardi, I cannot see anything but the grossest kind of contributory negligence in this case. Granted the railroad company failed to do anything in the world they were supposed to do, it does not make any difference, if the driver of this truck drove toward something that was there for him to see and he said he did not see it. If a verdict was returned in your favor I do not believe you would ever get by. I am going to grant the motion.

"(Argument of Mr. Gagliardi.)

"THE COURT: When it is there for him to see it, the law says he has got to see it. The motion will be granted and an exception will be allowed.

"I am sorry for this woman, but I do not think the railroad company should pay unless the law says it should."

A motion for new trial was timely made by plaintiff and denied, and on March 29, 1948, the court entered a judgment dismissing the cause with prejudice. Plaintiff has appealed from the judgment entered.

The assignments of error are (1) in granting defendant's motion for nonsuit and in refusing to submit the question of contributory negligence to the jury; (2) in denying the motion for new trial.

Appellant states that

". . . there is but one question involved in this appeal, and that is whether or not the evidence introduced by the plaintiff revealed that the truck driver was negligent as a matter of law, which negligence was the proximate cause of decedent's death and contributed thereto."

On the morning of February 27, 1947, William Velacich, a milk truck driver, and Alexander McBeath, a route supervisor for Medosweet Dairy, of Tacoma, left the company's plant with a truckload of milk for delivery on route 36 of the dairy. Mr. McBeath, as a part of his duties as route supervisor, was accompanying Mr. Velacich, a new driver, and was showing him the route, which was out around Ponders, Steilacoom, and the Country Club, and required that the men drive south from Tacoma on highway 99. A few miles south of Tacoma and to the west of highway 99,

or on the right of one proceeding south on the highway, is an area known as Nyanza Park, which at the time first herein mentioned was a rapidly growing community, and there was a large housing project under construction.

On the morning of the accident, these two employees of Medosweet decided to drive into the area and talk to the foreman of the construction company about selling him milk for his crew. The only means of access to this area from highway 99 is over a road known as Chicago avenue. Respondent's right of way runs parallel to highway 99, and at the point where it is crossed by Chicago avenue is about one hundred or one hundred twenty-five feet west of highway 99. Over this track, trains of respondent travel from Tacoma to the Grays Harbor district. At the time Mr. Velacich made his turn from highway 99 onto Chicago avenue, a train was proceeding south from Tacoma and approaching the crossing at Chicago avenue. The truck and the train reached the crossing at the same time, and a collision occurred, in which Alexander McBeath was killed.

 In considering a motion of this kind, we have repeatedly announced the following rules as applicable to a determination of the question:

"We have repeatedly held that such motions admit the truth of the evidence of the party against whom the motion is made and all inferences that reasonably can be drawn therefrom, and require that the evidence be interpreted most strongly against the moving party and in the light most favorable to the opposing party." *Bleyhl v. Tea Garden Products Co.*, 30 Wn. (2d) 447, 453, 191 P. (2d) 851, and cases therein cited.

"A court will not be justified in taking from the jury the question of contributory negligence unless the acts committed by the party charged therewith are so palpably negligent that there can be no two opinions concerning them." *Billingsley v. Rovig-Temple Co.*, 16 Wn. (2d) 202, 204, 133 P. (2d) 265.

Having in mind the above rules, the following are the material facts relative to Mr. Velacich's occupation and duties prior to the day of the accident and his actions from the time he turned onto Chicago avenue up to the time of

the collision, and relative to the condition of the surrounding area. Mr. Velacich testified that, before going to work for Medosweet, he had been in the army, where for about two years he had driven a truck. He had worked for the dairy for some time, but had been driving a milk truck only a few days prior to the accident. While he stated that he did not know of the existence of the railroad track prior to the accident, he admitted that on the previous day he had gone into this same area, which required that he cross the track in going in and coming out of the area.

It should be kept in mind that Chicago avenue runs in a general easterly and westerly direction, and the Northern Pacific track runs north and south.

The evidence of Mr. Velacich shows that, as one turns from highway 99 onto Chicago avenue, there are a small garage and building on the corner on the right, which would obstruct the view to the north. There was also evidence that, as one approaches the track, there are trees and brush which further obstruct the view to the north to some extent. From the photographs introduced by appellant, and the testimony, it is apparent that the railroad track, to the left of the crossing at least, is in view of a person who is looking, from the time he turns onto Chicago avenue, although there was some testimony to the effect that there were a slight embankment and some weeds on the left side of the road.

Grace Carrier, called as a witness by appellant, testified that for over twenty years she had lived on the opposite side of highway 99 from the crossing here in question, and about one hundred fifty feet from Chicago avenue; that she could see the crossing from her house and from her yard; that, as one turns west onto Chicago avenue from highway 99, a little house and a garage stand on the north side on the corner; that the terrain is perfectly open for a distance of seventy-five to one hundred feet before the track is reached.

The evidence shows that Chicago avenue dips slightly as it leaves highway 99, and then has a gradual rise to within about ten feet of the railroad track, from which point it rises about a foot in the last ten feet to the crossing. The evidence shows that, on the morning of the ac-

cident, Chicago avenue was in a bad state of repair—that it was full of chuckholes and rocks.

There is evidence that the railroad track to the north of the crossing runs through a cut or ravine, but it is undisputed that it was twenty feet from the east bank of this cut to the center of the railroad track. In other words, there is at least a distance of twenty feet to the east of the crossing where one approaching the track on Chicago avenue can see along the track to the north for a distance of half a mile or more.

Mr. Velacich testified that, as he turned onto Chicago avenue, he was looking ahead and made a "swoop" with his eyes from left to front and front to right; that he did not look from left to right beyond the surface of the road until the front of his truck was about five feet from the railroad track. Between the times he looked, as above indicated, he testified he was busy watching the road, looking from one side to the other, to pick out the best place to drive his truck, which was in low gear and traveling between seven and ten miles an hour.

During his entire testimony, he at all times claimed he did not know that a railroad track was there. He also testified that no whistle was blown or other warning given by the train crew of the approach of the train to the crossing, although in a statement which he admitted that he read and signed on April 14, 1947, he stated:

"There is some noise in the truck with the bottles rattling, and then being in low gear, so it is possible the train might have whistled and the engine bell might have been ringing, but I didn't hear it."

There is no warning sign along Chicago avenue, calling attention to the crossing.

From the actions of Mr. Velacich and from the surrounding conditions which were actually there to be seen had he looked, can it be said as a matter of law that Mr. Velacich was guilty of contributory negligence which materially contributed to the collision and the death of Mr. McBeath?

▮ Before determining the above question, let us examine and determine the effect of Velacich's profession of ig-

norance of the existence of the railroad track. The effect of such a statement is discussed in 44 Am. Jur. 812, § 558, which we quote:

"The duty of a person approaching a railroad crossing to employ all of his senses for the purpose of ascertaining whether or not it is safe to cross does not come into existence unless and until such person has knowledge, or by the exercise of reasonable care should have knowledge, that there is in fact a crossing at the place in question. Hence it cannot be determined as a matter of law that a stranger traveling upon a highway over which a railroad crosses, of the existence of which he is unaware, is guilty of contributory negligence because he fails to look and listen, where the track is obscured and there is nothing to indicate its presence or warn him of its existence, and where, because of darkness or otherwise, it was not shown that he could have seen it if he had looked. Consequently, it is proper to show, as bearing on the issue of contributory negligence, that the plaintiff was ignorant of the railroad crossing at which he was injured. A traveler, however, is bound to keep a lookout ahead and cannot escape guilt of contributory negligence by not seeing a railroad track which he could have seen if he had been exercising ordinary care on the highway. Darkness is no excuse for failure to discover a crossing where such failure resulted from defective lights on the plaintiff's automobile.

"The absence of a sign at or near a crossing for the purpose of indicating the crossing will not excuse the contributory negligence of a person injured at the crossing where such person knew of the crossing and could not have been misled by the absence of the sign. Nor does the mere absence of a warning board at a point where a spur railroad track crosses a highway justify a traveler on the highway in assuming that the track is not in use."

It is apparent from the above statement that Mr. Velacich's profession of ignorance is very material in determining the main question in this case. Can we say that Mr. Velacich will be held to have had knowledge of the existence of the railroad track, regardless of his profession of ignorance?

We stated in *Fluhart v. Seattle Electric Co.*, 65 Wash. 291, 298, 118 Pac. 51:

"Evidence of physical facts making it certain a pedestrian must have seen, or could have seen an approaching car had he looked, renders unavailing his unsupported statement that he did look but could not see. Oral statements, although undisputed, must yield to undisputed physical facts and conditions with which they are irreconcilable. From the physical facts and respondent's evidence it is apparent he recklessly, carelessly, and negligently walked too near the approaching car, and that in so doing he was guilty of contributory negligence."

We also stated in *Campbell v. Spokane United Rys. Co.*, 174 Wash. 347, 350, 24 P. (2d) 1068:

"The fact that the appellant testified that he did not see or know that there was but a single street-car track across the steam railway tracks does not excuse him, because the situation was plainly visible, and it must be held that he either saw or should have seen the situation."

■■ Mr. Velacich's own testimony, and the physical facts as shown by the photographs introduced herein, including those introduced by appellant, render unavailing his statement that he did not see the railroad track and did not know it was there, for the track was plainly visible from points where he stated he looked. Mr. Velacich testified on direct examination:

"Q. Is the railroad track visible where it crosses Chicago Avenue to a person coming from the east? Could you see that there was a railroad track across that street? A. You could see a little to your left but not to your right . . . Q. How fast were you traveling when you approached that crossing? A. Between seven and ten miles an hour. Q. Were you looking ahead or to the right or left? A. I was looking ahead and made a swoop with my eyes from left to the front and then to the right. Q. Up to the time you were on the track did you know there was a railroad track there? A. No, sir."

The witness further testified on cross-examination as follows:

"Q. I think you testified yesterday that somewhere between the highway and the track you gave a swoop with your eyes? A. That is right; as you swing in off the highway you make a glance. Q. You did that? A. Yes. Q. As you

turned off the highway? A. As I turned into Nyanza Park. . . . Q. Do I understand that as you turned off Highway No. 99 on to this lane that leads in there, you looked to the left and right both? A. Yes. Q. Then you did not look again until—(interrupted) A. I was watching the road as I was coming up. Q. Did you look again? A. When just about on the tracks I noticed this ravine. Q. There was one look as you left the highway? A. Yes. Q. And another look as the front of the truck was within five feet of the track. Now, did you look at any time between those two looks? A. I do not recall now. Q. At any rate, you never saw the train? A. That is right; I never seen it until I was on the ground."

While Mr. Velacich testified on direct examination that he had passed over this track in going to and from the same area the day before, he stated he did not observe the track because he and the supervisor were talking. On cross-examination, the witness was asked:

"Q. The tracks were there, weren't they? A. I noticed them too late. Q. But the tracks were there? A. When I got on the tracks, sure. Q. They were in plain view? A. Yes, but it was too late."

It may be stated further that it is undisputed that the floor of the milk truck was about one foot above the level of the ground, and that Mr. Velacich was standing up as he approached the railroad crossing. It is further undisputed that, because of the location of the windows in the truck, he had a good view both to the right and the left as well as to the front, and that his vision was in no wise obscured by Mr. McBeath, who was standing in the truck to his right.

From the testimony herein and from the physical facts as further shown by the photographs introduced, and especially plaintiff's exhibit No. 11, we are of the opinion that there is only one conclusion which can be arrived at, and that is that, as a matter of law, Mr. Velacich must be held to have had knowledge of the existence of the railroad track, and that he must therefore be held to the exercise of that degree of care in approaching the railroad track which the law demands of a person having such knowledge.

We have considered the authorities cited by appellant, wherein we have held that the question of contributory negligence was for the jury. We think generally there is a distinguishing feature between the cited cases and the case at bar. In the cited cases, we think the evidence shows that the injured person either did something to protect himself or relied upon a condition which excused him for his lack of care. In such cases, it may be admitted that the question of contributory negligence is usually one for the jury.

In the instant case, while the law holds this truck driver to a knowledge of the existence of the railroad track, the evidence, in our opinion, is undisputed that he did absolutely nothing to protect himself or to prevent the collision.

We have so many times held that a railroad track is in itself a warning of danger that it seems needless to cite authority. See *Dumbolton v. Oregon-Washington R. & Nav. Co.*, 186 Wash. 433, 58 P. (2d) 806.

Under the facts and circumstances shown in this case, we are of the opinion that men could not differ in their conclusion that Velacich was guilty of negligence which proximately contributed to the collision and the death of Mr. McBeath, and such negligence, being imputable to Mr. McBeath, prevents a recovery on the part of appellant.

In view of this conclusion, we do not deem it necessary to pass on the question of the alleged negligence of respondent. Neither do we think it necessary to pass upon the question of whether Chicago avenue was a private or public road. We may say, however, that while there was no evidence that Chicago avenue was ever dedicated in the strict legal sense, there was evidence that it had been used for many years by the public generally in going to and from the Nyanza Park area.

For the reasons herein assigned, the judgment of the trial court must be, and it is, affirmed.

BEALS, STEINERT, and HILL, JJ., concur.

MALLERY, J., dissents.