[No. 31044.  *En Banc.*  January 20, 1951.]

LYDIA WITTE, *as Administratrix, Appellant,* v. V. I. WHITNEY *et al., Respondents.*[1]

[1]Reported in 226 P. (2d) 900.

*L. B. Donley* and *Henderson, Carnahan & Thompson,* for appellant.

*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *Altha P. Curry,* for respondents.

MALLERY, J.—On May 5, 1946, at about noon, the defendant, V. I. Whitney, rented a 1941 Chevrolet sedan to the decedent Irving Witte. The car had been acquired from Grays Harbor county by Mr. Whitney, who is an automobile dealer in Montesano, a few days previous to the accident giving rise to this case, and had been driven some eighty thousand miles by the county. The only test made by the defendant, to ascertain the condition of the car, was that of taking it out and actually driving for several miles. He and his witnesses testified that the brakes were satisfactory. Further testimony was introduced by the defendant to show that the brakes had been relined and checked by Grays Harbor county as recently as February 28, 1946.

Plaintiff's expert witness, Mr. Reinhart, testified, without contradiction, that it was the best practice among automobile dealers, and the customary practice, to check the level of the hydraulic fluid in the brake system in addition to the standard test of driving the car. This testimony was in reference to second-hand cars.

Mr. Witte rented the car for the purpose of driving his son to Portland, Oregon. Richard, the son, testified that the defendant's sales manager handled the transaction, and had represented that it was in good ·operating condition. The family, composed of Mr. and Mrs. Witte, with Richard as driver, left Montesano for Portland the afternoon of May 5, 1946. This was the first occasion that Richard had to drive the car. He testified that, during the trip, he used the foot brake "occasionally, as you normally would use a foot brake when driving a· car," and that the brake "appeared to work in a sluggish manner. It didn't seem

alarmingly so, but it wasn't quite right." He testified further, however, that he was able to control the car satisfactorily, notwithstanding the fact that the brakes did not function with one hundred per cent efficiency, and that the pedal had to be depressed somewhat before the brake system was actuated.

At the time of this accident, Highway 99, north of Castle Rock, descended on a slight grade and then curved to the southwest (to a southbound driver's right) on a down grade of about five per cent, into a viaduct which is straight. Richard testified that, after making the turn toward the southwest, at about two hundred feet from the viaduct, the car was moving into the setting sun, which, at a point some one hundred eight feet from the entrance of the viaduct, practically blinded him. He testified that the car was then moving at the rate of about twenty-five miles per hour.

Concerning his action when he first faced the sun on the turn, Richard testified that he tried to bring the car to a stop, applying both the foot brake and the hand brake almost simultaneously. Both brake systems failed to operate. It was at this point that he saw a dirt road that intersected the highway at the east end of the viaduct. He attempted to turn left, to cross the highway onto this dirt road, but the attempt failed, and the car collided with an abutment on the east end of the viaduct. Mr. Witte sustained mortal injuries.

The widow, Lydia Witte, having been appointed administratrix of Mr. Witte's estate, instituted this action against V. I. Whitney and his wife, claiming damages on account of alleged negligence on the part of Whitney, who will hereafter be referred to as though he were the sole defendant in the action. The plaintiff alleges that the accident was proximately caused by the negligence of the defendant and his employees in renting an unsafe automobile to Mr. Witte, in that the brakes were defective, and that such negligence was the proximate cause of Mr. Witte's death. By way of an affirmative defense, the defendant alleged that the accident was the result of the negligence of Richard, and did

not occur because of any negligence on the part of the defendant.

The action was first tried to a jury, which returned a verdict in favor of the plaintiff. On the defendant's motion, a new trial was granted, which resulted in a disagreement of the jury and failure to return a verdict. The defendant moved for judgment in his favor notwithstanding the disagreement of the jury, which motion was granted. A judgment was entered dismissing the plaintiff's action, and the plaintiff appeals, making the following assignment of errors:

"(1) In granting respondent's motion for judgment notwithstanding the disagreement of the jury.

"(2) In finding in its oral decision that there was no evidence of respondent's negligence sufficient to permit the jury to pass upon that question.

"(3) In finding in its oral Decision that Richard Witte was guilty of contributory negligence as a matter of law.

"(4) In entering a judgment of dismissal herein."

This appeal presents but one question: Does the evidence reveal that the appellant (through Richard) was contributorily negligent as a matter of law, which negligence was the proximate cause of the decedent's death?

■■ This court is bound to consider the evidence, and the inferences therefrom, from the standpoint most favorable to the appellant. *Baker v. Mutual Life Ins. Co.*, 32 Wn. (2d) 340, 201 P. (2d) 893; *Geri v. Bender*, 25 Wn. (2d) 50, 168 P. (2d) 144. Contributory negligence may be determined as a conclusion of law under this type of case only where the facts are undisputed and but one reasonable inference can be drawn from them. *Richardson v. Pacific Power & Light Co.*, 11 Wn. (2d) 288, 118 P. (2d) 985; *Chadwick v. Ek*, 1 Wn. (2d) 117, 95 P. (2d) 398. No element of discretion is given to the court. *Ruff v. Fruit Delivery Co.*, 22 Wn. (2d) 708, 157 P. (2d) 730.

■ The relationship between the respondent and the appellant was that of bailor and bailee, and while a bailor for hire is not an insurer against injuries from defects, he is held to a high degree of care in examining the car before renting it. *Trusty v. Patterson*, 299 Pa. 469, 149 Atl. 717;

24 Am. Jur. 496, Garages, Parking Stations, and Liveries, § 35.

■ The bailor is not liable for defects which could not have been discovered by a most careful examination, but the question of whether the bailor's examination of the car is reasonable, under the circumstances, was for the jury. *Saunders System Birmingham Co. v. Adams,* 217 Ala. 621, 117 So. 72, 61 A. L. R. 1333; *Carroll v. Minneapolis Drive Yourself System,* 206 Wis. 287, 239 N. W. 501; *Charles System v. Juliano,* 66 F. (2d) 931.

■ A bailee for hire has no duty of inspection before using a car. He has a right to assume that it is roadworthy. What would constitute a notice of defect sufficient to shift the responsibility to him, in the event that the defect causes an accident, is a factual question for the jury to determine, in the light of all the circumstances of the case.

Richard was not a mechanic. He was merely an average driver. While he admitted that the brakes seemed sluggish, he felt that they were satisfactory. It would be within the province of a jury to say whether an ordinary driver would be put upon notice by a sluggish brake, that a serious defect existed. The jury might think that only an experienced mechanic would be bound to recognize its significance.

■ Where the brakes of an automobile have previously functioned in a satisfactory manner, but suddenly fail to respond, the driver is not guilty of contributory negligence unless he had, or should have had, knowledge of the defective condition. We do not think that the evidence is sufficient to hold, as a matter of law, that Richard was put upon such notice. A finding by the jury that the brakes were defective when the car was rented, that the driver was unaware of the danger, and that such defect was the proximate cause of the accident, would be supported by the evidence. *Roberts v. Leahy,* 35 Wn. (2d) 648, 214 P. (2d) 673; *McBeath v. Northern Pac. R. Co.,* 32 Wn. (2d) 910, 204 P. (2d) 248.

It was, therefore, error to take the case from the jury and decide it as a matter of law.

The judgment is reversed, and the case remanded for a new trial.

SCHWELLENBACH, C. J., GRADY, HAMLEY, and DONWORTH, JJ., concur.

BEALS, J. (dissenting)—In my opinion, the judgment appealed from should be affirmed.

Irving C. Witte, the deceased, rented the car from respondent, V. I. Whitney, for the purpose of transporting his son, Richard, to Portland. Richard drove the car, his father sitting beside him, while Mrs. Witte occupied the rear seat. From Richard's testimony, it appears that, in the course of the eighty-mile drive, he had become aware of the fact that the foot brake operated sluggishly. He did not at any time test the hand brake. It would have been a simple matter to have stopped at a garage and requested that the brakes be checked. It would also seem that one driving a rented car for the first time should at least test the hand brake.

In *Petersen v. Seattle Automobile Co.*, 149 Wash. 648, 271 Pac. 1001, this court said:

"We think one who undertakes to drive an automobile on the public streets and highways must be charged with notice of everything that a reasonable inspection would disclose, whether the car belongs to him, or to another and is loaned or rented to him for the occasion."

In 3-4 Huddy Encyclopedia of Automobile Law (9th ed.) 127, § 71, appears the following text:

"Generally speaking, it is the duty of one operating a motor vehicle on the public highways to see that it is in reasonably good condition and properly equipped, so that it may be at all times controlled, and not become a source of danger to its occupants or to other travelers.

"To this end, the owner or operator of a motor vehicle must exercise reasonable care in the inspection of the machine, and is chargeable with notice of everything that such inspection would disclose. This rule applies whether the operator is the owner of the vehicle or rents it from another."

In 6 Am. Jur. 307, § 190, appears the following:

"There is authority for the view that the bailee has the

right to rely on the implied warranty on the part of the bailor that the article bailed is suitable for the purpose known to be intended, and that, as regards the bailor, he owes no duty of examination, but if the bailee subsequently discovers defects in the chattel, as to such defects he is, it seems, not entitled further to rely on the bailor's warranty of fitness, and if he does so, he, and not the bailor, is responsible for resulting damages."

In § 197, p. 311, of the same text, the rule is stated as follows:

"Even where the obligation of one letting a chattel for hire is regarded as one of implied warranty, there is authority for the view that if the bailee knows of a defect in the thing hired, or, in the exercise of ordinary care, ought to discover it, and, notwithstanding this actual or implied knowledge, he uses the thing, and injury results on account of the defect, he will be held to have waived his right to claim damages, since by the exercise of ordinary care he could have avoided the consequences of the bailor's neglect. Accordingly, support is found for the rule that if the bailee, at the time of the bailment, has knowledge of a defective or dangerous condition of the bailed article and accepts it notwithstanding, he assumes the risk of injury therefrom. Moreover, it would seem that the bailor is not liable for injuries from defects of which the bailee later became cognizant, where the bailee used the chattel notwithstanding."

The cases of *Higman v. Camody,* 112 Ala. 267, 20 So. 480, 57 Am. St. 33, and *Clise v. Prunty,* 108 W. Va. 635, 152 S. E. 201, are also in point.

This court has repudiated the "scintilla of evidence doctrine" and has held that evidence sufficient to support a verdict must be substantial. *Ruff v. Fruit Delivery Co.,* 22 Wn. (2d) 708, 157 P. (2d) 730.

Accordingly, I dissent from the opinion by the majority.

ROBINSON and HILL, JJ., concur with BEALS, J.