Karl Wilhelm RINKLEFF, Jr., Individually; Mary Jane Rinkleff, Individually; and Erik Rinkleff, Heidi Rinkleff, Sara Rinkleff, Maria Rinkleff, and Patrick Rinkleff, Minors, by Karl Wilhelm Rinkleff, Jr., Their Father and Next Friend, Appellants,

v.

Jerry KNOX d/b/a/ Best Rental Center, Appellee.

No. 84–1153.

Supreme Court of Iowa.

Oct. 16, 1985.

John W. Holmes of Beecher, Beecher, Holmes & Rathert, Waterloo, for appellants.

James E. Walsh, Jr. of Clark, Butler & Walsh, Waterloo, for appellee.

CARTER, Justice.

Plaintiff in personal injury litigation appeals from judgment entered on jury's finding that he was chargeable with ninety percent of the causal negligence occasioning his injuries. He argues several assignments of error relating to the trial court's instructions and rulings on evidence. On consideration of these arguments, we reverse the judgment and remand for a new trial.

Plaintiff, Karl Wilhelm Rinkleff, Jr. (Rinkleff), who had contracted to perform indoor painting at an automobile dealership, was injured when a scaffolding on which he was working tipped over causing him to fall to the floor. The painting was being performed by Rinkleff and his helpers, Donald Verbraken, Kevin Verbraken, and Russell Vlasek. Two scaffoldings were being used on the job. One was owned by Kevin Verbraken and the other had been rented by Rinkleff from the defendant, Jerry Knox, d/b/a Best Rental Center (Best Rental).

It was the rented scaffolding from which Rinkleff fell. That scaffolding was picked up at Best Rental by Rinkleff at 3:20 p.m. on Friday, January 14, 1983. An employee of Best Rental helped him load the disassembled scaffolding into a van which he used to transport it to John Deery Motors in Cedar Falls, where the painting was to take place. The disassembled scaffolding consisted of rectangular-shaped end frames made of steel tubing.

These end frames were seventy-two inches high and twenty-eight inches wide. In assembling the scaffolding, two end frames are connected to each other by bolting two steel cross braces along each edge. When so assembled, the end frames would be standing in a vertical position approximately four feet apart. Planks can then be laid across the top of the frames to form the supporting surface of the scaffolding. It is possible to make a double-deck assemblage by using four end frames and six cross braces and then stacking one seven-

ty-two inch by twenty-eight inch by four foot unit on top of the other. This was the configuration intended by Rinkleff for use in spray painting the twenty-foot high ceilings at John Deery Motors.

In attempting to assemble the scaffolding sometime after 4:00 p.m. on Friday, January 14, 1983, Rinkleff discovered that the cross braces were the wrong length—a circumstance which made the end frames too far apart for the length of the planks which were to go across the top. In addition, Rinkleff noticed that no casters had been furnished for insertion in the legs of the end frames in order to facilitate rolling the assembled scaffolding from place to place as the work progressed. Such casters had been listed on the rental receipt which Rinkleff had signed and a charge had been made therefor. Rinkleff returned to the Best Rental office around 5:00 p.m. on the same day and secured the missing casters and cross braces of the proper length.

The assembling of the scaffolding in a double-deck configuration was then completed. The height of the supporting surface on top of this scaffolding was then slightly more than twelve feet from the floor. Casters were inserted in the legs of the end frames. The wheels on these casters were approximately one and one-half inches in diameter and were attached to a shank about four inches long which could be inserted in the hollow steel tubing which formed the legs of the end frames. There were holes in both the shank and the end frame legs so that the casters could be secured with pins or bolts. No pins or bolts were furnished by Best Rental in the rental of this equipment to Rinkleff. As a result, all that held the casters in place was the weight of the scaffolding which they supported. If the legs of the end frames were lifted from the floor, the casters would fall out. The wheels of the casters could be locked so as to immobilize the scaffolding in a given location.

The painting work at John Deery Motors proceeded on Saturday, January 15, and Sunday, January 16. Both the Verbraken scaffolding and the rented scaffolding were being used. About 5 p.m. on Sunday, the rented scaffolding was moved into an area where the floor sloped toward a drain. Kevin Vlasek had rolled it to that location with Rinkleff riding on the top in a crouched position. Vlasek, who was standing on the floor nearby, noticed that one of the casters had fallen out. Rinkleff was positioned at this time near the end where the caster was missing, and the scaffolding tipped in this direction. The caster in the other corner on the same end then fell out. The scaffolding then tipped in that direction and fell over causing Rinkleff to fall twelve feet to the floor.

Rinkleff sustained a broken wrist in the fall. Surgery was required to repair the wrist, and a second surgical procedure was later required to correct resulting nerve damage. He brought this action against Best Rental seeking to recover for past and future medical expenses, loss of earnings, and pain and suffering. His wife and five children also brought claims against Best Rental for loss of services and support. The plaintiffs all alleged that Best Rental was negligent in several particulars in regard to the condition of the scaffolding which overturned and in failing to warn Rinkleff of the dangers involved in its use.

An IOSHA compliance officer was called as an expert witness by Rinkleff. Although no legal duties under IOSHA were presented under the theories submitted to the jury, this witness was permitted to testify concerning industry safety standards believed to be indicative of ordinary care. The witness testified that the scaffolding configuration involved in the present litigation is called a "free standing scaffold." In regard to this type of scaffolding, the witness indicated that its height cannot safely exceed four times its minimum width unless it is anchored to a wall. The witness further testified that, if workers are riding on a rolling scaffold, its height cannot safely exceed twice its minimum width.

The jury returned a series of special verdicts, finding that Best Rental and Rinkleff

were both negligent, that Rinkleff's negligence amounted to ninety percent of the total causal negligence, that Rinkleff sustained damages of $50,000, his wife, $2500, and each of his five children $200. The resulting judgment rendered in favor of Rinkleff against Best Rental was in the amount of $5000. Only this judgment and not those of his wife and children are involved in this appeal. Other facts will be set forth in our discussion of the legal issues presented on the appeal.

I. *Requested Instruction on Bailee's Right to Assume That Bailed Property is Safe for Use.*

We first consider Rinkleff's challenge to the trial court's failure to instruct the jury that he had no duty to inspect the equipment which he rented prior to using it. In his action against Best Rental, Rinkleff has claimed that that company was negligent in (1) furnishing a scaffolding from which the casters could fall out, (2) furnishing a scaffolding which was too narrow for the height at which Best Rental was told the work would be done, and (3) failing to warn Rinkleff of the dangers in using narrow scaffolding at the working height which was intended. Best Rental alleged that Rinkleff himself was negligent in certain particulars some of which related to his alleged failure to inspect the equipment prior to using it. Rinkleff requested that the trial court instruct the jury in the determination of these issues that he "had no duty of inspection before using the scaffolding" and "had a right to assume it was safe for use." He took a timely exception to the trial court's refusal to give the requested instruction.

As authority for the giving of this requested instruction, Rinkleff relies on *Witte v. Whitney*, 37 Wash.2d 865, 869, 226 P.2d 900, 902 (1951) and Restatement (Second) of Torts § 408 comment a (1965). The *Witte* case states in regard to the rental of an automobile that "a bailee for hire has no duty of inspection before using a car. He has a right to assume that it is road-worthy." 37 Wash.2d at 869, 226 P.2d at 902. Best Rental argues that this principle, if

valid at all, has reference only to latent defects and does not relieve someone who undertakes to assemble a structure from inspecting the components which are being set up.

The Restatement comment on which Rinkleff relies provides "the fact that a chattel is leased for immediate use makes it unreasonable for the lessor to expect that the lessee will do more than give it the most cursory of inspections." Best Rental argues that this comment is intended to delineate the obligations of the bailor, based upon what can reasonably be expected in a commercial bailment where the need for immediate use of the equipment will often militate against the opportunity to conduct a detailed examination. It is not, Best Rental urges, a limitation on the duty of the bailee to make such examination as may be required in exercising reasonable care for the bailee's own safety.

We have recognized that the real basis of negligence in the primary sense is not carelessness but behavior which should be recognized as involving an unreasonable danger to others. *Evans v. Howard R. Green Co.*, 231 N.W.2d 907, 913 (Iowa 1975). When this principle is applied to contributory negligence, the concern becomes whether one's conduct "creates an unreasonable risk of harm to one's self or one's own interests." *Board of Water Works Trustees v. Alvord, Burdick & Howson*, 706 F.2d 820, 825 (8th Cir.1983) (applying Iowa law). *See also Carter v. Wiese Corp.*, 360 N.W.2d 122, 137 (Iowa Ct.App. 1984); F.V. Harper & F. James, *The Law of Torts* § 22.10, at 1227 (1956).

■ In applying this concept to the present inquiry, we are convinced that, in the exercise of ordinary care, a person who fabricates a structure on which he or she intends to work at some height from the ground has some obligation to evaluate the stability and safety of both the components and the finished structure prior to using it. Because we find that Rinkleff's requested instruction that he had no duty of inspection serves to unduly dilute that obligation,

we hold that the trial court acted correctly in refusing to give it.

II. *Objections to Specifications of Contributory Negligence Submitted to the Jury.*

We next consider the arguments made by Rinkleff that certain of the specifications of contributory negligence contained in the trial court's instructions should not have been submitted. We discuss only those claims in which we find some merit.

The trial court instructed the jury that the claims of contributory negligence against Rinkleff included the following:

(1) In not knowing or applying safe scaffolding use practices as required under the laws of the State of Iowa

(2) In not knowing or applying safe scaffolding use practices as recommended by the American National Standards Institute.

Rinkleff made timely objection to the inclusion of these particular specifications of negligence in the court's instructions on the ground that they were not supported by the evidence, were not sufficiently specific, and that they served to impose upon him duties to which he was not subject and which were not adequately explained in the instructions. Our review of the record convinces us that some of these claims have merit.

 The purpose of requiring the jury to consider "specifications of negligence" is to limit the determination of the factual questions arising in negligence claims to only those acts or omissions upon which a particular claim is in fact based and upon which the court has had an opportunity to make a preliminary determination of the sufficiency of the evidence to generate a jury question. *Teeling v. Heles*, 195 N.W.2d 704, 708 (Iowa 1972). Each specification should identify either (a) a certain thing the allegedly negligent party did which that party should not have done, or (b) a certain thing that party omitted to do which should have been done, under the legal theory of negligence which is applicable. *See Anthes v. Anthes*, 258 Iowa 260, 265, 139 N.W.2d 201, 205 (1965).

 The trial court's instructions contain only one standard of care to be utilized by the jury in determining whether Rinkleff was negligent. This is the standard of ordinary care embraced in Uniform Jury Instruction 2.1 (July 1982). The instruction given was as follows:

"Ordinary Care" is such care as an ordinary, responsible and prudent person would exercise under similar circumstances.

By "Negligence" is meant the want of ordinary care, the failure to do something which a reasonably prudent person, guided by those considerations which ordinarily regulate the conduct of human affairs, under the circumstances, would do, or the doing of something which a person, under such circumstances, would not do.

Because the only definition of negligence given the jury was want of ordinary care, the specifications of contributory negligence should have simply identified those specific acts or omissions finding support in the evidence which Best Rental claimed were "want of ordinary care" by Rinkleff. Specifications (1) and (2) above are the complete antithesis of this approach. They fail to specify any particular act or omission and, in addition, seem to incorporate some extraneous standard of care not applicable in evaluating Rinkleff's conduct.

The IOSHA compliance officer who testified as an expert witness indicated that the practices of the American National Standards Institute were applied in the enforcement of Iowa Code chapter 88. But that testimony was only offered as evidence of an industry standard of ordinary care. Neither the American National Standards Institute nor the IOSHA standards had any direct application in establishing Rinkleff's obligation to avoid an unreasonable risk of harm to himself. Rinkleff may have been an employer at the time and place of his injuries. Nevertheless, for purposes of adjudicating his negligence, if any, in an action by or against a nonemployee, neither Rinkleff nor Best Rental is within the pro-

tective class benefited by chapter 88. *See Wilson v. Nepstad,* 282 N.W.2d 664, 667 (Iowa 1979); Restatement (Second) of Torts § 286 (1965).

■ We conclude that specifications of negligence (1) and (2) above are each fatally defective in the dual respect of permitting the jury to consider an extraneous duty to which Rinkleff was not subject and in failing to sufficiently specify those acts or omissions which are claimed to constitute the negligence with which he is being charged. We further conclude it is sufficiently likely the inclusion of these additional specifications of negligence prejudiced Rinkleff in the allocation of negligence between the parties that a new trial is warranted.[1]

III. *Bailor's Duty to Warn.*

Although our holding in the preceding division would be sufficient to dispose of the appeal, we consider certain additional issues which may arise again on a retrial. The trial court's instruction concerning Best Rental's duty to warn of defects or dangers in the equipment which it rented was as follows:

[T]he bailor has a duty to those whom he should expect to use the property, or be endangered by its probable use, to use reasonable care to make it safe for use in a manner for which, and by a person for whose use it is bailed, or *to disclose its actual condition to those who may be expected to use it.*

(Emphasis added.) Rinkleff objected to this instruction on the basis that the bailor's duty to warn in the present case went considerably beyond disclosing the "actual condition" of the disassembled scaffolding components.

In addition to objecting to the trial court's instruction, Rinkleff submitted a requested instruction which would have told the jury:

Defendant ... as a bailor also owed the plaintiff a duty to warn or instruct him

of any particular hazards or risks involved in the use of the scaffolding ... if such hazards or risks were of a kind which would not be readily discoverable or observable to the person or persons using the scaffold.

He timely excepted to the trial court's refusal to give this requested instruction. Rinkleff's argument that he was entitled to an instruction which indicated a broader duty to warn than that given by the trial court is hinged on the following duties recognized in Restatement (Second) of Torts § 388 (1965):

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

We generally approved the standard of care recognized by this section of the Restatement in *West v. Broderick & Bascom Rope Co.,* 197 N.W.2d 202, 209 (Iowa 1972). Rinkleff correctly points out that under comment c of this section of the Restatement the duties imposed extend to "any person who for any purpose or in any manner gives possession of a chattel for another's use, or who permits another to use or occupy it." Section 407 of the Restatement expressly extends such duties to persons who rent chattels. Two Minnesota cases

---

1. Rinkleff also contends that another specification of contributory negligence which involved not "training his employees with regard to the safe use of scaffolding" was an improper sub-

mission of IOSHA duties. We fail to see where this specification is in any way tied to duties imposed under IOSHA and find it was a proper specification under Rinklff's common law duty.

have applied the standards of section 388 and section 390 of the Restatement in finding that rental companies were negligent in failing to warn intended users as to risks attendant in the improper use of scaffolding. *See Clark v. Rental Equipment Co.,* 300 Minn. 420, 220 N.W.2d 507, 511 (1974); *Miller v. Macalester College,* 262 Minn. 418, 426–30, 115 N.W.2d 666, 672–74 (1962).

■ We conclude that the foregoing authorities support the applicability of the standards of section 388 of the Restatement to bailed chattels, including the duty of warning which is made applicable by that section. We are further convinced that the trial court's instruction on warning, limited as it was to disclosure of the chattel's "actual condition" inadequately presented these standards. While a warning as to actual condition may have obviated the negligence claims based on a failure to supply pins to hold the casters in place, there was evidence of other dangers inherent in the overall stability of the scaffolding which would not have been apparent from a mere description of actual condition.

■ Best Rental argues, however, that a duty to warn under section 388 did not arise in the present transaction because Rinkleff was a professional painter who should have been equally aware of the dangers of working on unstable scaffolding. We have recognized that the obligation to warn under section 388 turns on the concept of superior knowledge. *West,* 197 N.W.2d at 209. But, we do not believe that Best Rental's argument that it did not have superior knowledge in the present case may be sustained as a matter of law. This question presented an issue of fact for the jury which was required to be submitted under proper instructions.

Rinkleff was, at the time of his injuries, a carpenter employed by a hospital. He had been a professional painter at one time and was "moonlighting" on the John Deery Motor Company job. Rinkleff testified, however, that his previous painting experience had been residential painting and that he was not familiar with the use of scaffolding in the manner involved on the John Deery Motors job.

Rinkleff further testified that he advised the employee of Best Rental who waited on him that the job would require spray painting at heights of twenty—twenty-four feet and that, having been given this information, that employee selected the scaffolding which was involved in the accident. Given the dimensions of the end frames which were rented to Rinkleff, spray painting at a height of twenty—twenty-four feet would necessarily have required a scaffolding configuration which exceeded four times the minimum width of the frames. According to the expert testimony, this was an unsafe use of the scaffolding.

Viewing the evidence in the light most favorable to the plaintiff, Best Rental was on notice that Rinkleff intended to use the scaffolding in an unsafe manner—a circumstance from which it could have inferred that he was unfamiliar with the dangers involved. Best Rental's knowledge of the danger involved may be inferred from the evidence indicating that it placed a decal on the scaffolding end frames stating: "CAUTION—Follow All Federal, OSHA, State Wide and Local Regulations For The Proper Use Of This Equipment." Rinkleff denied that this decal had been placed on the equipment he rented. Regardless of whether it had been, Best Rental's evidence was indicative of knowledge by the bailor that, in the interest of safety, a warning of the IOSHA standards should have been given. Moreover, even if the warning decals had been on the end frames at the time Rinkleff rented them, that circumstance does not establish as a matter of law that an adequate warning of the particular dangers involved was given. The adequacy of the warning was a jury issue which was required to be submitted under proper instructions.

We hold that the trial court's instruction limiting Best Rental's duty to warn to a disclosure of the acts of the "actual condition" of the unassembled scaffolding components was inadequate. The instruction

should have included the material elements of section 388 of the Restatement.

### IV. *Evidentiary Rulings.*

We also consider for purposes of retrial Rinkleff's claim that the trial court should have admitted into evidence the parts catalog of the Bil-Jax Corporation which manufactured the steel tubing scaffolding involved in the present litigation. The purpose of this evidence was to show the availability of "safety literature" which could be ordered from the manufacturer. The catalog was offered as an exhibit without being identified through the foundation testimony of any witness. A hearsay objection was interposed and sustained.

 Rinkleff urges that Iowa Rule of Evidence 803(17) provides an exception to the hearsay exclusionary rule for materials of this type. We disagree. The rule to which Rinkleff refers relates to "published compilations, generally used and relied upon by the public or by persons in particular occupations." There is no evidence that the particular catalog was relied upon by the public or by persons in particular occupations as a source of safety literature at the times material to the issues presented in the present litigation. Nor is there any indication in the record that the items designated as "safety literature" in that catalog were in fact available at such times. We do not believe that manufacturers' catalogs are self-authenticating as to the availability of the items therein listed at a particular time or place. *See* Iowa R.Evid. 902. Separate and apart from any hearsay objection to admissibility of such evidence the authentication or identification requirements of Iowa Rule of Evidence 901(a) must also be satisfied. The trial court did not err in sustaining the objection to the offer of this evidence.

### V. *Scope of Retrial.*

The only issue remaining for our consideration is the scope of the issues which must be retried. As we have indicated, the parties make no effort to distrub the judgments entered in favor of Rinkleff's wife and five children against Best Rental.

With respect to Rinkleff's individual claim against Best Rental, the case is reversed for retrial of all issues except the amount of damages. The amount of Karl Rinkleff's damages shall be deemed to have been established by the verdict of the jury at the first trial.

REVERSED AND REMANDED.

All Justices concur except WOLLE, J., who concurs in part and dissents from division V.

WOLLE, Justice (concurring in part and dissenting in part).

I concur in divisions I, II, III, and IV of the majority opinion, but I dissent from division V in which the issue of Karl Rinkleff's damages is deemed established by the verdict of the first jury. The first jury trial was sufficiently flawed to entitle defendant to a new trial. I believe the jury hearing the new trial should decide the single damage claim remaining by deliberating upon and resolving all the issues enveloped therein—negligence of Karl, negligence of the defendant, whether the negligence proximately caused Karl's fall and resulting injuries, the percentage of causal negligence attributable to each, and the damages sustained by Karl as a result.

In deciding the scope of a second jury trial this court has traditionally recognized that as a general rule all issues should be retried. *See, e.g., Householder v. Town of Clayton,* 221 N.W.2d 488, 493–94 (Iowa 1974); *In re Estate of Ring,* 237 Iowa 953, 968–69, 22 N.W.2d 777, 785 (1946). Our cases have noted that the exception—a partial retrial with some issues deemed fixed by the first verdict—may only be applied "with caution." *Schmatt v. Arenz,* 176 N.W.2d 771, 775 (Iowa 1970); *Larimer v. Platte,* 243 Iowa 1167, 1176, 53 N.W.2d 262, 267–68 (1952). *Larimer* suggested that a partial retrial should not be granted unless "it should appear that the issue to be tried is distinct and separable from the other issues, and that the new trial can be had without danger of complications with other matters." *Id.*

In my view the general rule, not the exception, should apply in this comparative negligence case because the issues of liability are closely related to, and intertwined with, the damage issues. Only those damages proximately caused by defendant's negligence will be recoverable, and the jury's verdict establishing Karl's damages will be reduced by the percentage of causal negligence which the jury allocates to him. I would simply remand this case for a new jury trial without giving conclusive effect to the verdict of the first jury on the issue of damages.