**Ronald D. PRIOR, Appellant,**

v.

**UNITED STATES POSTAL SERVICE, Appellee.**

No. 92–1517.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 10, 1992.

Decided Feb. 16, 1993.

Steven K. Warbasse, Cedar Rapids, IA, for appellant.

Paul C. Lillios, Asst. U.S. Atty., Cedar Rapids, IA, for appellee.

Before WOLLMAN, Circuit Judge, BRIGHT and HENLEY, Senior Circuit Judges.

---

HENLEY, Senior Circuit Judge.

Ronald D. Prior appeals from a final judgment entered by the district court[1] in favor of the United States Postal Service (USPS) in this action brought under the Federal Torts Claim Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680. We affirm.

Prior worked from March 1981 to June 1987 as a truck driver for Emory Fretheim, an independent contractor for the USPS. Fretheim contracted with the USPS to haul mail between Decorah, Iowa to Waterloo, Iowa. Under this agreement, Fretheim was to receive the mail at the edge of the post office loading dock, load the mail onto his truck, haul the mail to the destination post office, and unload the mail onto the post office loading dock.

The USPS uses various types of containers to ship the mail. The type of container involved in this case is called an "all purpose container," or APC. An APC is essentially a cage on wheels. It is approximately six feet high, two feet wide, and three and a half feet long. It weighs over 200 pounds empty and may carry over 800 pounds of mail. The APC has an upper and lower compartment. The upper compartment door is located on the side of the APC and opens by swinging downward. Generally, mail is first loaded into the lower compartment of the APC, and then into the upper compartment if needed. The upper compartment door is closed by swinging it upwards and latching it at the top. A push bar or handle is attached to one end of the APC and is used in moving the APC.

On June 12, 1987, Prior picked up mail in Decorah and drove to Waterloo as usual. Prior began unloading the truck at the Waterloo post office loading dock, and as he was pulling one of the APC units out of the truck the upper door of the unit fell open and struck him in the shoulder. Prior eventually filed this lawsuit alleging that the USPS was negligent for failing to properly latch the APC door.

Following a two-day bench trial, the district court found that the postal employees in Decorah had negligently failed to secure the door to the APC which injured Prior. The court also found that Prior was negligent for failing to check the APC latch in Decorah, and for failing to check the latch again in Waterloo. Although Prior claimed he was pulling the APC by its handle when the door fell open, the district court specifically discredited this version of the facts. The court found that Prior was grasping a vertical bar either at the corner of the APC or on the upper door of the APC while standing to the side of the unit.

The district court found that the negligence of the postal employees was a proximate cause of Prior's injury, and found that this negligence constituted 25% of the causative fault. The court attributed 75% of the causative fault to Prior (20% for failing to check the latch in Decorah, 25% for failing to check the latch in Waterloo, and 30% for operating the APC unsafely). On appeal, Prior argues that the district court erred in finding him negligent for failing to discover and protect himself from the USPS's negligence, and in finding him 75% at fault.

Because the alleged tort in this case occurred in Iowa, all substantive issues in this FTCA case are governed by Iowa law. *See Kruchten v. United States*, 914 F.2d 1106, 1107 (8th Cir.1990). We review the district court's findings of fact under the clearly erroneous standard. *See* Fed. R.Civ.P. 52(a). Under this standard of review, we will not overturn a factual finding unless it is not supported by substantial evidence, it is based on an erroneous view of the law, or we are left with the definite and firm conviction that an error has been made. *See Burns v. McGregor Elec. Indus., Inc.*, 955 F.2d 559, 563 (8th Cir.1992) (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).

■ Prior first argues that the district court's findings are clearly erroneous because they are based on an erroneous view of the law. He contends the court erred in finding that he had a duty to inspect the

---

**1.** The Honorable Charles R. Wolle, Chief Judge of the United States District Court for the Southern District of Iowa, sitting by designation in the Northern District of Iowa.

APC latches before moving the APC unit. The Iowa Supreme Court rejected a similar argument in *Rinkleff v. Knox*, 375 N.W.2d 262 (Iowa 1985).

In *Rinkleff*, the plaintiff rented scaffolding equipment from the defendant. The plaintiff assembled the scaffolding, used it for several days to paint a ceiling, and was injured when the scaffolding tipped over. At trial, the plaintiff argued that the defendant was negligent for providing scaffolding equipment that could easily tip over. The defendant argued that the plaintiff was negligent in failing to inspect the equipment before using it. The trial court refused to instruct the jury that the plaintiff had no duty to inspect the scaffold prior to using it. The Iowa Supreme Court affirmed, noting that in a case involving a claim of contributory negligence, "the concern becomes whether one's conduct 'creates an unreasonable risk of harm to one's self or one's own interests.'" *Id.* at 265 (quoting *Board of Water Works Trustees v. Alvord, Burdick & Howson*, 706 F.2d 820, 825 (8th Cir.1983)). The Iowa court went on to hold that:

> in the exercise of ordinary care, a person who fabricates a structure on which he or she intends to work at some height from the ground has some obligation to evaluate the stability and safety of both the components and the finished structure prior to using it. Because we find that Rinkleff's requested instruction that he had no duty of inspection serves to unduly dilute that obligation, we hold that the trial court acted correctly in refusing to give it.

*Id.* at 265–66. We find this language instructive in deciding the present case. Like the plaintiff in *Rinkleff*, Prior had some duty to inspect the equipment (*i.e.* the APC and its latch) before moving it.

Prior relies exclusively on our decision in *Water Works*, in which we noted that the plaintiff "owed no duty of care to the defendants; it only had an obligation to protect itself." 706 F.2d at 826. In a footnote, we quoted at length from an opinion of the Supreme Court of Connecticut which discussed "the distinction between a defendant who owes a duty of care to another, and a plaintiff to whom that duty of care is owed but "owes" a duty of care only to himself." *Id.* at 826 n. 8. Prior argues that (1) the USPS owed him a duty to properly latch the APC, (2) he relied on the USPS to perform that duty, and (3) there was no apparent condition or observation he could have made to put him on notice that the postal employees had failed to latch the APC. Therefore, according to Prior, he had no duty to be alert to discover any defects, and he had no duty to inspect.

Prior's argument not only ignores the principles discussed in *Rinkleff*, but also ignores the following sentence in *Water Works*: "If [an ordinarily prudent] person would have been aware of a dangerous condition, then, of course, the plaintiff would be chargeable with such awareness." *Id.* (quoting *Darling v. Burrone Bros., Inc.*, 162 Conn. 187, 198, 292 A.2d 912, 919 (1972)). Prior had a duty to act with "ordinary care," which is defined in Iowa as "the care that a reasonably careful person would use *under similar circumstances.*" *Hillrichs v. Avco Corp.*, 478 N.W.2d 70, 74 (Iowa 1991) (emphasis in original). The term ordinary care "describes a flexible duty that adjusts to the status of the actor and the circumstances that the actor faces." *Id.*

Under Iowa law, Prior had a duty to act as a reasonably careful truck driver when he moved the APC. We cannot say the district court clearly erred in finding that Prior's duty included checking the APC latches. The court heard testimony from postal employees, from a truck driver for another independent contractor, and from Prior himself about the importance of checking the APC latches. To hold, in these circumstances, that Prior had no duty to inspect would "unduly dilute" Prior's obligation to use ordinary care.

■ Prior next argues that the district court was clearly erroneous in assessing the amount of comparative fault attributable to him. Under Iowa law, "[i]n determining the percentages of comparative fault, a trier of fact shall consider both the nature of the conduct of each party and the

extent of the causal relation between the conduct and the damages sustained." Iowa Code § 668.3(3) (1987); *see also* H. Woods, Comparative Fault § 5:5 (2d ed. 1987) (discussing "causal negligence" or "causative fault").

We concede that we are troubled by the court's finding that 75% of the causative fault was attributable to Prior. Our decision in this case, however, is controlled by our standard of review. We note that the clearly erroneous standard "does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Anderson*, 470 U.S. at 573, 105 S.Ct. at 1511. The district court found that Prior was negligent in three distinct ways on the night of his injury: first, by failing to inspect the latches in Decorah; second, by failing to inspect the latches again in Waterloo; and third, by walking to the side of the APC. The evidence in the record supports the district court's conclusions regarding the allocation of causative fault and we cannot say the court was clearly erroneous.

The judgment of the district court is affirmed.